COMMONWEALTH *vs.* DONALD WHITE.

No. 98-P-460.

Suffolk. October 8, 1999. - February 29, 2000.

Present: Jacobs, Gillerman, & Lenk, JJ.

*Evidence,* Hearsay, Impeachment of credibility, Prior conviction. *Practice, Criminal,* Sentence. *Constitutional Law,* Sentence.

At the trial of a criminal case, no substantial risk of a miscarriage of justice arose from a hearsay statement elicited by defense counsel on cross-examination and used effectively in support of the defense, in light of the strong evidence against the defendant. [659-661]

In a criminal case, there was no error in the judge's pretrial ruling allowing the Commonwealth to introduce, for impeachment purposes, twenty-three of the defendant's convictions, all admissible under G. L. c. 233, § 21. [661]

In a criminal case, the judge's ill-advised comments to the jury after the verdicts were received, regarding the asserted inadequacy of the defendant's sentences on over one hundred prior convictions, and his further comments in the same vein at the sentencing hearing, created the appearance that he may have improperly undertaken to punish the defendant for other conduct than that for which the defendant had been convicted; the matter was remanded for resentencing before a different judge. [661-665]

INDICTMENT found and returned in the Superior Court Department on October 31, 1995.

The case was tried before *Thomas E. Connolly,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Jane L. McDonough,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Two people were killed in Boston on October 9, 1995, when the pickup truck in which they were riding was struck by a Buick LeSabre automobile. A Superior Court jury convicted the defendant of several crimes relating to that colli-

sion, including two counts of manslaughter.[1] On appeal, he argues that (1) unlawful hearsay testimony was admitted in evidence, creating a substantial risk of a miscarriage of justice; (2) the judge abused his discretion in ruling that if the defendant were to testify, the prosecution would be permitted to impeach him with evidence of numerous prior convictions; and (3) the judge erred by citing inappropriate factors in the course of sentencing. We affirm the convictions but remand the case for resentencing by a different judge.

There was no evidence of the defendant being observed either driving the Buick or in the vicinity of the collision. The Commonwealth's case essentially was based on evidence that the Buick had been stolen; that it was traveling at seventy-two miles per hour when it collided with the pickup; that the windshield-mounted rear view mirror had been knocked off; that blood found on the dashboard was of the same type as the defendant's blood; and that a fingerprint on the steering wheel matched that of the defendant.

The defendant did not testify. His evidence consisted essentially of the testimony of the following witnesses: his mother, who stated that he had been in her apartment at the time of the collision; an attorney, who physically examined him a week after the collision and saw no sign of injury; and an expert, who disputed the fingerprint evidence.[2]

1. *Claim of improper hearsay.* A police accident reconstruction expert testified that he examined the Buick and observed that the rear view mirror, center-mounted on the inside of the windshield, had been knocked off. During cross-examination, in an attempt to show that the expert's report[3] was tainted because it contained inaccurate information that had been obtained from others, defense counsel first asked the witness whether he had concluded in his report that the driver of the Buick must have

---

[1]The convictions were for two counts of manslaughter, G. L. c. 265, § 13; two counts of motor vehicle homicide, G. L. c. 90, § 24G(*b*); receiving a stolen motor vehicle, G. L. c. 266, § 28; leaving the scene of an accident after causing property damage, G. L. c. 90, § 24(2)(*a*); and operating a motor vehicle so as to endanger, G. L. c. 90, § 24(2)(*a*).

[2]Although he utilized expert testimony to contest the Commonwealth's fingerprint evidence at trial, the defendant does not argue any related issue on appeal.

[3]During the officer's direct testimony there were references to a report he wrote containing his observations and measurements made at the accident scene. The report was not admitted in evidence.

struck the mirror with his head, and obtained an affirmative reply. Defense counsel then asked whether he was told the defendant had a head injury and, over the prosecutor's objection on hearsay grounds, the witness answered, "Yes, sir." On redirect examination, the witness acknowledged, over the defendant's objection, that he had received that information from media sources and "Crime Stoppers."

Conceding that the hearsay information reached the jury inadvertently,[4] the defendant argues that because the jury then could use it for the truth of the matter asserted (that the defendant had a head injury), its impact created a substantial risk of a miscarriage of justice.[5] We view this issue in a more complete context. In his opening statement, the prosecutor, over objection, referred to the assistance of Crime Stoppers in the postaccident focus on the defendant, but said nothing about the nature of that assistance or of a head injury. Defense counsel stated in his opening that the police expert would testify that the driver of the Buick must have had a head injury, but that there would be no evidence of such an injury. In closing argument, defense counsel relied both upon the testimony of several witnesses who had observed no visible injuries on the defendant after the collision and the police expert's statement of a head injury to argue that the evidence pointed away from the defendant. The prosecutor in his closing remarks essentially concentrated on the fingerprint found on the steering wheel.

In the circumstances, i.e., defense counsel having elicited the

---

[4]The defendant argues that his trial counsel apparently believed the testimony about a head injury had been admitted for impeachment purposes, and that it thus is not clear what he intended by his objection during the prosecutor's redirect examination. He states, "it did not occur to anyone to ensure that a limiting instruction [be] given." "Ordinarily judges are not required, sua sponte, to instruct juries as to the purposes for which evidence is offered at trial." *Commonwealth* v. *Roberts*, 378 Mass. 116, 126 (1979). It is the duty of defense counsel to request limiting instructions. See *Commonwealth* v. *Swenson*, 368 Mass. 268, 274 (1975).

[5]The defendant correctly does not argue for application of the prejudicial or harmless error standard for evidence wrongly admitted after objection, which would be "quantitatively more favorable" to him, see *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 & n.7, 23 (1999), since it was his attorney who elicited the testimony of the head injury. The proper inquiry, therefore, is "whether, due to the jury's consideration of objectionable hearsay, 'there is a substantial risk of a miscarriage of justice.'" *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). See *Commonwealth* v. *Collier*, 427 Mass. 385, 390 n.5 (1998).

statement on cross-examination, and appearing to have used it effectively in support of his defense, the claim of any significant prejudice from the hearsay fails. Compare *Commonwealth* v. *Elder*, 389 Mass. 743, 754 (1983). The defendant was powerfully linked to operation of the stolen car by fingerprint evidence, not by any observation of a head injury. We conclude there was no substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

2. *Impeachment by prior convictions.* Toward the end of the trial, defense counsel announced that the defendant had chosen not to testify because of the judge's pretrial ruling denying his motion to preclude the Commonwealth from impeaching the defendant with his prior convictions. At that point the judge indicated that if the defendant testified he would allow the Commonwealth to introduce, for impeachment purposes, as many of the defendant's numerous convictions as fell under the statute (G. L. c. 233, § 21). The record indicates there were twenty-three such convictions. The defendant now argues that he effectively was denied his right to testify by the judge's abuse of discretion which derived from "the sheer quantity of prior convictions that the judge announced he would admit." It is noteworthy that no argument is made that any of the convictions was similar to the crimes charged or was unrelated to the issues of credibility and honesty. While there is significant prejudicial potential in allowing even a well-instructed jury to learn that a defendant has a large number of prior convictions, to which trial judges should be sensitive, we are unaware of any authority imposing a numerical limit to such proof. See *Commonwealth* v. *Reid*, 400 Mass. 534, 539 (1987) ("We have never suggested that an abuse of discretion would arise from the admission of dissimilar prior convictions merely because they are numerous"). Assuming that *some* of the defendant's assault, armed robbery, and firearm convictions could readily have been precluded, as matter of discretion, it is speculation to assume that the defendant then would have chosen to testify.

3. *Claim of improper sentencing.* Immediately after the verdicts were received, and the defendant was taken from the courtroom, the judge addressed the jurors, properly thanking them for their dedication and sacrifices. Early in his remarks he stated:

"Folks, you didn't hear from the defendant in this case.

> Now that the case is over, I can tell you, this gentleman
> has 107 criminal matters on his adult record. For many
> armed robberies he has served maybe about seven to ten
> years. That's all. He has approximately 12 juvenile mat-
> ters."

Continuing after defense counsel unsuccessfully objected, the
judge said:

> , "Ladies and gentlemen, sometimes I wonder whether
> our criminal system is working. This was a difficult case
> for us all, folks. But, when we think of our mothers,
> fathers, sons, daughters walking the streets of Boston and
> the rest and we see somebody with 105 entries on their
> adult criminal record and he's served five or seven years
> or something like that out in Cedar Junction, you can
> question this entire system, folks. . . ."

These ill-advised comments, delivered three days before the
sentencing hearing,[6] indicate not only that the judge thought the
defendant's prior sentences to have been inadequate but also
suggest that he "may have decided to lower the boom before
defense counsel could address any mitigating factors." *Com-
monwealth* v. *Lewis*, 41 Mass. App. Ct. 910, 911 (1996).
Moreover, these remarks raise concerns that, in this case, he
was not prepared to treat the sentencing hearing as "a crucial
stage" in the case and "not a static proceeding in which the
result is predictable." *Commonwealth* v. *Lykus*, 406 Mass. 135,
145-146 (1989).

These concerns hardly are allayed by the judge's further
comments at the sentencing hearing. After receiving statements
from relatives of the victims and recommendations from the
prosecutor and defense counsel,[7] he stated:

> "I looked at this gentleman's record, folks, to have ten
> armed robberies and to have only have served seven years,
> our Commonwealth shocks me to my inner core, shocks

---

[6]The defendant's criminal record properly had been revealed to the judge in
the course of the pretrial proceedings and at the time he was told the defendant
would not testify.

[7]The prosecutor recommended consecutive sentences of nineteen and one-
half to twenty years for the manslaughter convictions and fifteen years to
fifteen years and one day for the stolen vehicle conviction. Defense counsel
asked that "any sentence imposed be imposed concurrently."

me to my inner core. That is his record right there. We are out of our minds letting these people walk the streets with ten armed robbery convictions. Unbelievable. If our criminal justice system is to mean anything, not only must we have the arrests by our Boston Police and State Police and FBI, but we have got to have punishment, so people when they are caught know that they are going to have to pay the price and not come in and cry about this disadvantage and this disadvantage. We have got to keep in mind the lives of these two victims."

Immediately thereafter, the clerk announced the sentences.[8]

The judge's remarks again create the appearance that the sentences may have been influenced by his belief that the defendant's prior prison terms were inadequate. Although a judge's knowledge of a defendant's record of convictions and even of criminal charges pending against him "may serve a worthwhile public purpose," *Commonwealth* v. *LeBlanc,* 370 Mass. 217, 224 (1976), "a sentencing judge may not undertake to punish the defendant for any conduct other than that for which the defendant stands convicted in the particular case." *Id.* at 221. Such punishment implicates constitutional issues of due process. See *Commonwealth* v. *Bianco,* 390 Mass. 254, 259 (1983).

There is a clear distinction between using a defendant's criminal record to inform as to a number of relevant sentencing factors such as his character, dangerousness, and amenability to rehabilitation, and improperly reacting to perceived inadequacies of past sentences in that record to increase a defendant's punishment. Judges should honor that distinction and take special care to "never become or appear to be a partisan" in the

---

[8]Consecutive terms of nineteen and one-half to twenty years were imposed for the two convictions of manslaughter. A fourteen to fifteen year sentence, to run concurrently with the first manslaughter sentence, was imposed for receiving a stolen motor vehicle. The indictments charging motor vehicle homicide were dismissed on motion of the Commonwealth. The indictments charging leaving the scene of an accident and motor vehicle operation to endanger were filed, as recommended by the Commonwealth, without objection from the defendant. Our record does not indicate the express consent of the defendant.

After appeal to the Appellate Division, the manslaughter sentences were reduced to consecutive terms of fifteen to twenty years. The Appellate Division did not disturb the sentence imposed for the stolen motor vehicle conviction.

judicial process. *Commonwealth* v. *Haley,* 363 Mass. 513, 519 (1973). Whatever his personal and private beliefs may be, a judge cannot permit them to transform the judicial role from impartial arbiter to advocate for the Commonwealth or any party. See *Commonwealth* v. *Hart,* 149 Mass. 7, 8 (1889). To do so, or even appear to do so, disserves the entire judicial enterprise. That is not to say that a judge should not freely place on record his sentencing philosophy and particularized sentencing rationale. Such exposition serves not only to assist judges and attorneys in fulfilling their responsibilities, but also may be of value in addressing issues of sentencing disparity. Here, however, the judge's words go well beyond neutral explanation. In these circumstances, "[t]he appearance and interests of justice will be better served by resentencing," *Commonwealth* v. *Lebron,* 23 Mass. App. Ct. 970, 972 (1987), before a different judge. *Commonwealth* v. *Coleman,* 390 Mass. 797, 810-811 n.15 (1984) ("such a step will serve the interests of promoting the appearance that justice will be administered impartially, based solely on relevant criteria of sentencing"). The judge's reference to "people" who "cry about this disadvantage and this disadvantage" reinforces our decision that resentencing is required. There is nothing in the record to support the remark. Defense counsel's brief allusion at the sentencing hearing to the defendant's participation in drug treatment programs could not fairly be construed as a suggestion of disadvantage.

The Commonwealth's principal response to the sentencing issue is that the Appellate Division of the Superior Court reviewed and essentially reduced each of the defendant's consecutive manslaughter sentences, see note 8, *supra,* to consecutive terms of fifteen to twenty years. Appeal to the Appellate Division pursuant to G. L. c. 278, §§ 28A-28C, see *Commonwealth* v. *Franks,* 365 Mass. 74, 81 (1974), "is not a substitute for any appeal which a defendant may be entitled to take to the Supreme Judicial Court [or to the Appeals Court]. He may pursue either or both types of appeal after being convicted and sentenced." *Walsh* v. *Commonwealth,* 358 Mass. 193, 195 (1970). See *Commonwealth* v. *Molino,* 411 Mass. 149, 155 (1991). That the sentences before us were lawful in the sense that their terms were within statutory bounds does not insulate them from attack on the basis that the defendant was punished for crimes other than those for which he stands convicted and other constitutional

grounds. *Commonwealth* v. *LeBlanc, supra* at 224. *Commonwealth* v. *Coleman, supra* at 804.

4. *Conclusion.* We do not disturb the verdicts. The sentences on the convictions for manslaughter and for receiving a stolen motor vehicle are vacated and the case is remanded to the Superior Court for resentencing before a different judge. *Commonwealth* v. *Coleman, supra; Commonwealth* v. *Lewis*, 41 Mass. App. Ct. at 911-912.[9]

*So ordered.*

---

[9]The filing of the convictions for leaving the scene and operating to endanger are subject to vacation and resentencing under this order unless the defendant files with the Superior Court his consent to their being placed on file. See *Commonwealth* v. *Martin*, 425 Mass. 718, 719 n.1 (1997).