COMMONWEALTH *vs.* JOSE ALVES.

No. 98-P-1359.

Suffolk. September 12, 2000. - February 5, 2001.

Present: LENK, DREBEN, & GILLERMAN, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Sentence. *Witness,* Refusal
to testify. *Evidence,* Cross-examination, Failure to produce witness, Self-
defense.

In the circumstances of a murder trial, the judge abused his discretion in giv-
ing a missing witness instruction after the defendant's mother did not
complete her testimony, which was favorable to the defendant, or undergo
cross-examination, due to asserted health-related reasons, where there was
insufficient foundation to give the instruction [800-805]; however, given
the jury's verdict of manslaughter, this court concluded that the improper
instruction did not substantially sway the verdict: a new trial was not
required [805-806].

Evidence at the trial of a murder indictment upon which the defendant was
convicted of manslaughter did not warrant an instruction on self-defense,
and any instruction the judge did give on the issue could not have
prejudiced the defendant or violated any constitutional rights. [806-810]

A sentence for a conviction of manslaughter that was greater than sentencing
guidelines and less than the maximum possible sentence was not errone-
ous, and there was no basis in the record for an assertion that the judge
had sentenced the defendant vindictively. [810-811]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 5, 1996.

The cases were tried before *Vieri Volterra,* J.

*Mark R. Meehan* for the defendant.

*Brian J.S. Cullen,* Assistant District Attorney, for the
Commonwealth.

LENK, J. After trial by jury, the defendant, who had been
indicted for first degree murder and for unlawful possession of
a firearm, was convicted of the lesser included offense of
voluntary manslaughter as well as the firearm violation. He
claims on appeal that the trial judge erred in three respects: (1)

by giving a contemporaneous and unwarranted missing witness instruction directly after the witness, the defendant's mother, failed to resume her testimony; (2) in giving a flawed self-defense instruction; and (3) by imposing a sentence that, for improper reasons, exceeded the Massachusetts sentencing guidelines.

*The Commonwealth's case.* The Commonwealth sought to prove that the shooting death of Akim "Beefy" Mann by the defendant, Jose Alves, was a deliberate, premeditated, and vengeful act resulting from a friendship gone sour. Although the defendant and Mann had once been friends, in the months and especially the days before the May 14, 1996, shooting, the acrimony between them grew, until it reached a crescendo with Mann's shooting death.

In May, 1996, the defendant, Jose Alves, together with his mother and sisters, lived on Harrishof Street in the Roxbury section of Boston, across the street from Beefy Mann and his mother, Delores Mann. On May 10, the first of the final three confrontations between the two teenagers took place. The defendant was sitting with a friend in front of the building where Delores Mann lived. As Mann was leaving his mother's building, he tried to warn the defendant that someone was out to get him, but when the defendant replied that he did not want to hear it, Mann grew angry, and grabbed the defendant. An argument ensued. As the defendant started to walk away, Mann pulled out a knife. The defendant crossed the street to his house, returning moments later with a two-by-four piece of lumber with which he struck Mann several times across the ribs. Mann chased after the defendant, but was met with the defendant's mother, who emerged from her house and warned Mann that she would call the police if he did not leave. Mann hurled the two-by-four in the direction of, but without hitting, Mrs. Alves. He then retrieved a bat from his car, and ran up to the closed door of the Alves house and swung at it with the bat.

The next day, while the defendant was sitting on the front porch of his house with friends, Mann drove by in a car and pointed a black handgun at them. Afraid, they called the police. An officer who arrived shortly thereafter patted down the defendant and discovered hidden on him a kitchen knife. The officer testified that, as he drove with the defendant in an unsuccessful search for Mann, the defendant angrily stated several times, "please find this [individual, Mann,] because, if you

don't, I'm going to kill him." That afternoon, as previously planned, the Alves family moved to an apartment in the Dorchester section of Boston.

Three days later, disregarding the officer's strong suggestion that he stay away from his old neighborhood, the defendant, who had been staying with relatives in Somerville, returned with his cousin, Carlos Silveira, and another friend, "G." The three were walking down the street when they saw a car drive by and pull over. Gary Glover was driving what proved to be a stolen car, with Mann in the passenger seat. At Mann's request, Glover parked the car near the defendant and they got out of the car. Mann asked the defendant why he had hit him with a two-by-four and suggested they have a one-on-one fight. At this point, G walked away and the defendant ran across the street and pulled out a gun. Silveira advised the defendant to put the gun away and to have a fair hand-to-hand fight; the defendant walked further away, putting aside his gun. Mann and Silveira, however, began to argue, with Silveira grabbing Mann's shirt and Mann throwing him against a parked truck and punching him repeatedly in the face. Glover saw no weapons on either of them. Silveira yelled for the defendant, who ran back down the street while holding a gun, which he pointed at the still-fighting pair. He told Silveira to get out of the way and Silveira pushed Mann into the street. As Mann fell to the ground, the defendant fired the loaded gun and shot him.

To show that the defendant possessed a gun before the day of the shooting, the Commonwealth introduced the testimony of Lillian Santiago, a former neighbor of, and occasional visitor to, the Alves family. She testified that, on a visit to the Alves home in mid-May, 1996, she was shown a gun by Mrs. Alves that the defendant kept in his bedroom. Santiago's daughter, Mattie Robinson, a friend of both Mann and the defendant, testified that, on the day of the shooting, she had seen the defendant walking down the street with a handgun in the waist of his pants.

*The defendant's case.* The theory of the defense was that the defendant shot Beefy Mann in the course of defending his cousin, Carlos Silveira, and himself. The friendship between the defendant and Mann had deteriorated in the months before the shooting as a result of the defendant's efforts to separate himself from Mann and his violent tendencies. Beginning with the events of May 10, 1996, when Mann swung the bat against the

Alves front door and threatened to return to shoot Mrs. Alves and eventually kill the entire family, the defendant came to fear Mann. This fear grew when on May 11, the defendant, his sister Sandra, and Jerry Thames all saw Mann with a gun and Sandra heard Mann threaten to kill the defendant and his family. Upset and angry, the defendant later told the police officer who responded to the Alves call for help that he was going to kill Mann, but, in fact, he never meant to do so.

Carlos Silveira and the defendant each testified as to what took place the night Mann died. Silveira testified that he, the defendant, and G were walking down the street when Mann got out of his car and rushed toward them. Mann approached the defendant in a threatening manner and told him that he was going to kill him because the defendant had used a two-by-four across his ribs and had called the police on him. Mann tried to grab the defendant, but Silveira stepped between them and edged the defendant aside; the defendant walked away. After Mann saw that Silveira was trying to help the defendant get away, Mann began to threaten and grab Silveira. Although Silveira did not see any weapon on Mann, he noticed that Mann kept his right hand in his right pocket. Mann twice hit Silveira in the face as he stood backed up against a parked truck. Silveira yelled to the defendant for help, then fell to the sidewalk after Mann punched him again. Silveira heard a shot, but was unable to see anything else.

The defendant testified that, as he and his friends were walking down Walnut Street, he saw a car stop. Mann jumped out and approached him. The defendant ran to get away, but when he saw that Silveira and Mann were arguing, he stopped where G was standing, at the corner of Walnut and Dale Streets. He then saw Mann throw Silveira against a car. He heard his cousin twice call his name, then saw him on the ground. G stuck his hand out to the defendant; in it was a little black handgun. Not owning or having a gun himself, the defendant took G's gun and went to where Silveira and Mann were fighting. Standing directly in front of Mann, who was holding Silveira down with his knee, the defendant noticed that Mann was trying to get something "out of his back." As the defendant stepped around Mann to see what he had there, Mann leaped at him. The defendant heard a shot and saw Mann fall, but has no memory of having pulled the trigger.

## DISCUSSION.

A. *Missing witness instruction.* The defendant claims that the trial judge erred in giving a missing witness instruction to the jury after the defendant's mother failed to resume the witness stand. On Friday afternoon, March 28, 1997, the fourth day of · trial, the defendant called his mother, Edelmira Alves, to the stand. With the aid of an interpreter, Mrs. Alves testified on direct examination that, contrary to Lillian Santiago's testimony, Santiago had been at the Alves home on only two occasions, that Mrs. Alves had never found any type of gun in her son's room, and that she had never shown Santiago a gun. She also testified that, at some time before the shooting, there had been an incident between herself and Mattie Robinson, Santiago's daughter, and that she had pressed criminal charges against Robinson.

In the middle of defense counsel's direct examination, Mrs. Alves apparently became quite agitated and, when asked to calm down, stated, "It's not me. It's just my heart." The judge suspended for the day, with defense counsel indicating his doubt that the witness would be any better on Monday. The trial resumed on Monday morning. Out of the presence of the jury, defense counsel informed the court that Mrs. Alves was unable to testify further for psychological and cardiac-related reasons, and requested that the court strike her testimony and give the jury an appropriate instruction. The judge, noting that defense counsel had not presented any medical evidence of the witness's heart condition, suggested that the witness's comportment was within her control and concluded that Mrs. Alves was available to and under the control of the defendant, and had made herself unavailable to the Commonwealth for purposes of cross-examination. He struck the testimony of the witness. After the judge stated that the Commonwealth would be permitted to comment in its closing that the witness chose to make herself unavailable to the Commonwealth, the Commonwealth re-quested that the judge also instruct the jury that the witness was no longer available. Without alerting or discussing his inten-tions with counsel, the judge gave the jury a missing witness instruction as soon as the jury reconvened. Defense counsel objected and now claims on appeal that the instruction given by the judge was not warranted under relevant case law and that giving it was an abuse of discretion.

No Massachusetts case has been brought to our attention, and we are aware of none, that addresses precisely the issue presented here, i.e., whether, in addition to striking the witness's testimony, it is appropriate to give a missing witness instruction when a witness who has testified on direct examination later becomes unavailable to complete that examination and undergo cross-examination. The case law suggests that, in such instances, it has ordinarily been the practice, when constitutionally required or otherwise appropriate, for the judge promptly to strike the witness's direct testimony and to instruct the jury at that time and in the final charge to disregard her testimony. *Commonwealth* v. *Davis*, 380 Mass. 1, 11 (1980). *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 221 (1991). See Liacos, Massachusetts Evidence § 3.3 (7th ed. 1999 & Supp. 2001). When "a witness declines to answer all relevant questions on cross-examination or, because of illness or otherwise, is unavailable for cross-examination," and "there was no meaningful opportunity to cross-examine," rather than moving for a mistrial, "[t]he better practice is to move to strike the witness's testimony." *Commonwealth* v. *Kirouac*, 405 Mass. 557, 562-564 & n.6 (1989). The testimony need not be struck if it goes to collateral matters. *Commonwealth* v. *Funches*, 379 Mass. 283, 293 (1979). *Commonwealth* v. *Dwyer*, 10 Mass. App. Ct. 707, 712-713.(1980).

Appellate review of the propriety of a missing witness instruction has to date been limited to situations where a party has failed altogether to call a witness. See *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 243-244 (1990), *S.C.*, 418 Mass. 562 (1994), cert. denied, 513 U.S. 1091 (1995); *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. 383, 386 (2000). We are unaware of any case where, in addition to striking the testimony of a witness who has given incomplete testimony, the jury were also instructed that they may regard the witness as missing and draw inferences adverse to the defendant concerning that witness's expected testimony.

In this case, it was defense counsel who requested that the judge strike Mrs. Alves's testimony and instruct the jury to disregard it. No one suggests that the judge acted improperly in doing so. The judge, however, went well beyond this request when he instructed the jury on the missing witness inference. The question before us is whether, in taking this extra step, the judge abused his discretion.

A missing witness instruction is only appropriate when a

party fails "to call a witness who would normally be expected to be called." Liacos, Massachusetts Evidence § 5.6.2, at 247 (7th ed. 1999 & Supp. 2001). Here, the defendant did call his mother as a witness but she failed to complete her testimony and undergo cross-examination. See *Neal* v. *Nimmagadda*, 279 Ill. App. 3d 834, 846-847 (1996) (plaintiff in medical malpractice case was not entitled to the missing witness instruction because the witnesses were not "missing witnesses" since they testified at a deposition and at trial). It is fair to say that Mrs. Alves is hardly the classic missing witness, if indeed a "missing" witness at all. Moreover, it is within the trial judge's discretion whether to give a missing witness instruction even when circumstances in fact warrant one. "Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution." *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992), quoting from *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). The judge must in any event first "rule, as matter of law, that there is a sufficient foundation for such inference in the record." *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. at 387, quoting from *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 81 (1993).

In determining whether a sufficient foundation exists, the judge is to consider four factors: (1) whether the case against the defendant is strong and whether, faced with the evidence, the defendant would be likely to call the missing witness if innocent; (2) whether the evidence to be given by the missing witness is important, central to the case, or just collateral or cumulative[1]; (3) whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness; and (4) whether the party has a "plausible reason" for not producing the witness. See *Commonwealth* v. *Graves*, 35 Mass. App. Ct. at 82-83; *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 827, 830-831 (2000).

As to the first factor, the strength of the Commonwealth's

---

[1] The inquiry as to the strength of the Commonwealth's case appears to have application both in cases where the Commonwealth has requested the missing witness instruction, see *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. at 387, as well as in cases where the defendant requests such an instruction. See *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 827, 829-830 (2000).

case, we observe that the defendant was charged with first degree murder, and the Commonwealth sought to prove that the defendant had committed an unlawful killing with malice and with deliberate premeditation. *Commonwealth* v. *Whitman,* 430 Mass. 746, 751 (2000). There was evidence that the defendant had a gun prior to the shooting, that he expressed an intent to kill the victim, and that he set about doing so with deliberate premeditation and malice. Other than his mother's testimony, the only testimony countering the Commonwealth's evidence as to the defendant's possession of a gun before the shooting was the defendant's own. Faced with the Commonwealth's evidence, the defendant would likely call his mother to corroborate his testimony that he had no gun; indeed, this is precisely what happened at trial. The relevance of the first missing witness factor in these circumstances is less than clear.

Turning to the second factor, the judge must consider whether the evidence the missing witness would give "would be merely cumulative, corroborative of other testimony, or peripheral to the question of innocence." *Commonwealth* v. *Spencer,* 49 Mass. App. Ct. at 387, quoting from *Commonwealth* v. *Olszewski,* 416 Mass. 707, 724 (1993), cert. denied, 513 U.S. 835 (1994). If so, "[c]omment [on the missing witness inference] is not permissible." *Commonwealth* v. *Spencer,* 49 Mass. App. Ct. at 387. Mrs. Alves was not an eyewitness to the shooting itself. See *Commonwealth* v. *Vasquez,* 27 Mass. App. Ct. 655, 659 (1989). Compare *Commonwealth* v. *Thomas,* 429 Mass. 146, 152 (1999). While we do not know what else she might have testified to had she resumed the stand and both completed her direct examination and submitted to cross-examination, we do know — unlike the typical missing witness case — that she had testified in rebuttal of Santiago's gun testimony and corroborated other testimony as to Mann's propensity for violence.

While Mrs. Alves was the only witness to corroborate in part the defendant's testimony that he did not own or have a gun, a key point, and her testimony may have buttressed the defendant's credibility, Mrs. Alves is the defendant's mother. As a result, the jury would not likely give much weight to her exculpatory testimony. "Common sense and the case law dictate that the testimony of a blood relative of the defendant is inherently less credible than the testimony of other witnesses." *Commonwealth* v. *Thomas,* 429 Mass. at 153. See *Commonwealth* v. *Roberts,* 433 Mass. 45, 51 (2000); *Commonwealth* v. *Hassey,*

40 Mass. App. Ct. 806, 812 (1996). While a case can be made for the judge's implicit finding that Mrs. Alves's testimony was not merely corroborative or collateral, see *Commonwealth* v. *Olszewski*, 416 Mass. at 725; *Commonwealth* v. *Graves*, 35 Mass. App. Ct. at 83; *Commonwealth* v. *Smith*, 49 Mass. App. Ct. at 831, it is not a terribly strong one. The second missing witness factor, then, while slightly favoring the giving of the instruction, does not tilt decisively in that direction.

The third factor the judge is to consider is whether the defendant had superior knowledge as to the identity or whereabouts of the witness. Mrs. Alves is the defendant's mother, which in an obvious sense gives the defendant some superior knowledge of her. Nonetheless, there is no suggestion in the record that the Commonwealth was unaware of Mrs. Alves's whereabouts or unable to subpoena her or otherwise procure her physical presence in court. Because she appears to have been equally available to both sides, this factor does not favor drawing an inference against the defendant for her failure to complete her testimony. See *Commonwealth* v. *Figueroa*, 413 Mass. at 199 (no inference to be drawn against either side for failure to call witness when that witness equally available to both sides).

As to the final factor, the inquiry is whether, based on "ordinary logic and experience," there was a "plausible reason" for Mrs. Alves's failure to resume the stand. *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. at 244, quoting from 2 Wigmore, Evidence § 290 (1979). "The defendant may always relieve himself from any unfavorable inference [based upon his failure to call an important witness on his behalf] by showing that by reason of sickness or absence of the desired witness or from any other cause he has been unable to produce him; but he is to be held to reasonable effort to produce the witness, and in the absence of any evidence of such effort the rule [allowing unfavorable comment or a missing witness instruction] applies." *Commonwealth* v. *Graves*, 35 Mass. App. Ct. at 85, quoting from *Commonwealth* v. *Spencer*, 212 Mass. 438, 452 (1912).

Here, defense counsel informed the court that he had "made inquiry of her through the family and an interpreter on Friday as to whether or not she could testify today [Monday]. I asked her to evaluate that over the weekend. It is my belief, your Honor, that she would be unable to testify psychologically. We would have a repeat of her emotional state. Her daughter

informs me that she also has some type of heart condition; and I think, medically, she could not get through the testimony." The judge thought this justification inadequate. While the circumstances set forth in the representations of trial counsel, if believed, suggest a plausible reason for Mrs. Alves's failure to resume the stand, the conclusions of the trial judge who had observed Mrs. Alves's demeanor must be accorded deference.

When viewed as a totality, the application of the four missing witness factors to the situation at hand leads to the conclusion that a missing witness instruction should not have been given. The factors are to various degrees each somewhat ill-fitting and even those that do permit the instruction do not do so with conviction. The inference that the instruction permits — that the defendant wilfully attempted to withhold or conceal significant evidence — is harsh. This is particularly true when the witness is the defendant's mother and the inference that the jury may draw is that she would have testified adversely to her son. Ironically, had the mother testified in full, the jury would likely not have accorded great weight to her favorable testimony simply because, as the defendant's mother, she is expected to testify favorably to her son. It is quite otherwise when a mother testifies adversely to her son — this departure from the norm is likely to have considerable impact. It is precisely because a missing witness instruction can have serious consequences that it is only to be given "in clear cases, and with caution." *Commonwealth* v. *Figueroa*, 413 Mass. at 199, quoting from *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134. The concern is only heightened when the instruction to be given concerns a defendant's mother.

Where, as here, the foundational requirements were not squarely met and the case for giving the instruction was far from clear, we think the judge abused his discretion when, in addition to striking the mother's testimony, he characterized her as a missing witness and instructed the jury that they could draw the inference that Mrs. Alves's testimony would not be favorable to her son.

The question becomes whether this abuse of discretion warrants reversal. The defendant timely objected to the instruction and the standard of review is thus whether the error was

harmless.[2] An unwarranted missing witness instruction is grounds for reversal if the reviewing court cannot conclude " 'with fair assurance' that the [error] did not 'substantially sway' the outcome of the case." *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. at 391 (citations omitted). Alves was tried for first degree murder but was convicted of the lesser included offense of voluntary manslaughter. The verdict suggests that the jury found persuasive the proffered defense of self-defense and/or defense of another, but apparently concluded that the defendant had used excessive force. His mother had testified only as to Mann's propensity for violence and to rebut testimony that the defendant had a gun prior to the shooting. Her testimony as to Mann's violent ways merely corroborated that given by others on the point, one which in any event has little if any bearing on whether the defendant had used excessive force after coming to Silveira's aid. Similarly, her testimony as to the gun, even if it had been adverse to the defendant, would not bear on this element because it is undisputed that the defendant used a gun — his own or one given him on the scene — to shoot Mann.

The defendant was also convicted of possession of a firearm, but it too did not likely turn on any testimony his mother might have given. Not only did the defendant possess a gun at the time of the shooting, there was also ample evidence that the defendant had possessed a gun in the days before the shooting.

Given the jury's verdict and the strength of the Commonwealth's case, we conclude with fair assurance that the erroneous instruction did not substantially sway the outcome of the case. See *Commonwealth* v. *Graves*, 35 Mass. App. Ct. at 86. We do so mindful of the potential in other circumstances for significant prejudice when, in addition to striking testimony, a jury is permitted to infer that a parent would testify adversely to her child.

B. *Self-defense instruction.* An instruction on self-defense must be given if the evidence, seen in the light most favorable to the defendant, is sufficient to raise the issue. *Commonwealth*

---

[2] "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

v. *Harrington,* 379 Mass. 446, 450 (1980). The defendant contends that he was entitled to an instruction on self-defense and that the instruction given was flawed.[3] "A judge must instruct on self-defense in a homicide case if the evidence most favorable to the defendant warrants a reasonable doubt whether 'the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case.' " *Commonwealth* v. *Roberts,* 433 Mass. 45, 56 (2000) (citations omitted). See *Commonwealth* v. *Reed,* 427 Mass. 100, 102-103 (1998); *Commonwealth* v. *Berry,* 431 Mass. 326, 335 (2000). If "the issue of self-defense has been sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Commonwealth the burden of disproving the factor of self-defense beyond a reasonable doubt." *Commonwealth* v. *Reed,* 427 Mass. at 102, quoting from *Commonwealth* v. *Maguire,* 375 Mass. 768, 772 (1978).

Viewing the evidence in the light most favorable to the defendant, a juror could reasonably conclude that the Commonwealth had failed to prove that the defendant neither had a

---

[3]After the judge charged the jury, defense counsel objected to the failure to instruct on self-defense as had been requested in writing. In response, the judge gave the jury the following instruction on self-defense.

"It was brought to my attention at the side bar that I had not instructed on self-defense, that I only instructed on the issue of whether or not the Commonwealth had shown beyond a reasonable doubt that the defendant did not act in the defense of another person.

"Obviously, if the jury concluded that there was evidence in the case that the defendant, himself, had acted in self-defense on his own, then what I suggested to you in respect to the defense of going to the defense of a third person or going to the defense of another would apply to going to his own defense. You can consider everything I said in respect to going to the defense of another in respect to going to his own self-defense. So, once you conclude that there was evidence in the case that the defendant had gone to his own defense, then you should consider the issue of whether or not the defendant acted in self-defense and not only whether or not he acted in the defense of a third person or in the defense of another. So I leave that for your consideration."

basis for believing nor actually believed that he was in imminent danger of death or serious bodily harm. "For such a belief to be reasonable, the victim must have committed some overt act against the defendant. . . . Self-defense using deadly force is not justified in the absence of such a threat." *Commonwealth* v. *Pike*, 428 Mass. 393, 396 (1998). The defendant presented evidence that, when he was standing in front of Mann, whom he had known on previous occasions to carry a knife and a gun, he saw Mann both attempt to get something "out of his back" and then leap at him. This evidence, if believed, would permit a juror to entertain reasonable doubt as to whether the defendant was in imminent danger of death or serious bodily harm. See and compare *Commonwealth* v. *Little*, 431 Mass. 782, 786 (2000).

The next consideration is whether there was sufficient evidence to permit a juror to entertain reasonable doubt that the defendant availed himself of all proper means to avoid physical combat. According to his own testimony, the defendant ran back down the street in response to Silveira's call for help, and was handed a gun by G. When he approached Mann and his cousin Silveira, Mann was crouched down, kneeling on Silveira. Since the defendant approached Mann in an attempt to defend Silveira, we must consider whether there was sufficient evidence that, at the time he believed himself to be in imminent danger of death or serious bodily harm, the defendant availed himself of all proper means to escape.[4] The defendant, still a few feet in front of Mann, saw Mann put one hand behind his back and walked around Mann to see what he was doing. The defendant turned away for a moment because he saw someone else standing nearby in the street. As he turned back to face Mann, he noticed him trying to get something "out of his back" and he saw an object emerge. As the defendant stepped back around Mann, Mann leaped at him.

"Whether a defendant used all reasonable means of escape before acting in self-defense is a factual question . . . . Before that question may go to the jury, however, there must be some evidence that the defendant attempted to retreat or that no reasonable means of escape was available." *Commonwealth* v. *Pike*, 428 Mass. at 399 (evidence did not warrant self-defense instruction because no evidence that defendant attempted to

---

[4]The defendant does not challenge on appeal the instruction given as to defense of another.

retreat or that no reasonable means of escape was available). The defendant acknowledged he was standing above the crouched-down Mann in an open street when he saw Mann take something "out of his back." No evidence suggests that the defendant made any attempt, or lacked the opportunity, or was for some other reason unable to run away before Mann leapt toward him.

While it is true that, unlike the defendant in *Commonwealth* v. *Berry*, 431 Mass. at 335, the defendant here did not affirmatively acknowledge that he could have walked away from the victim, the evidence nevertheless fails to warrant a self-defense instruction. The fight occurred on a public street, the victim Mann was on the ground, and "at least at some point he [the defendant] had adequate means of escape" on that public street, which he failed to use. *Ibid.* See *Commonwealth* v. *Casavant*, 426 Mass. 368, 370 (1998) (no instruction on self-defense required "because no view of the evidence would have warranted a reasonable doubt as to whether the defendant took all proper means to avoid physical combat"); *Commonwealth* v. *Alebord*, 49 Mass. App. Ct. 915 (2000) (no self-defense instruction warranted since no evidence that the defendant, who knocked the victim down to the floor, tried or was unable to avoid physical combat by leaving the room). *Commonwealth* v. *Little*, 431 Mass. 782, does not require a different result. In *Little*, much as here, the defendant, whose left foot was in a cast and who was on crutches, shot the victim as the victim "made a motion like he was going for his hip," because he believed the victim to have a gun. 431 Mass. at 785. It was also undisputed in *Little*, unlike here, "that the defendant tried to talk the victim out of fighting," thereby evidencing an attempt to avoid physical combat. 431 Mass. at 786 n.3. There was no comparable evidence here that the defendant attempted to retreat or otherwise avoid physical combat.

Because the issue of self-defense was not sufficiently raised by the evidence, the defendant was not entitled to a self-defense instruction. Insofar as the trial judge was not required to give any instruction on self-defense, it is of no consequence whether the instruction given was not as complete as the defendant wished. "[W]hatever the judge said concerning self-defense . . . was more favorable to the defendant than he deserved and could not have prejudiced his position" or violated any of his constitutional rights. *Commonwealth* v. *Torres*, 420 Mass. 479,

492 (1995). See *Commonwealth* v. *Curtis*, 417 Mass. 619, 632 (1994).

C. *The sentence.* The defendant claims that the sentence imposed for voluntary manslaughter unfairly exceeded the proposed sentencing guidelines and that the judge's stated reasons for doing so were vindictive and inappropriate.[5] The defendant claims that the judge, in effect, rejected the jury's verdict and sentenced the defendant for second degree murder, a charge of which he had been acquitted.

The defendant concedes that the maximum statutory sentence for a conviction of voluntary manslaughter is twenty years, and that his sentence was for less than the maximum. G. L. c. 265, § 13. The defendant unsuccessfully appealed his sentence to the Appellate Division of the Superior Court, the appropriate forum for appellate review of a sentence, which, pursuant to G. L. c. 278, § 28B, "has final authority for review of sentences." *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 513 (1992). See *Commonwealth* v. *Callahan*, 419 Mass. 306, 308-309 (1995).[6] We review sentences only "for errors of law or constitutional violations" and "should not do so merely for matters concerning alleged disparities in sentencing." *Commonwealth* v. *Grimshaw*, 412 Mass. at 513.

"A judge has considerable latitude within the framework of the applicable statute to determine the appropriate individualized sentence." *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993). See *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. 810, 824 (1998); *Commonwealth* v. *Shea*, 46 Mass. App. Ct. 196, 197 (1999). We discern no basis in the record for the contention that the judge acted vindictively merely because he exceeded

---

[5]The jury found the defendant guilty of voluntary manslaughter and unlawful possession of a firearm. The trial judge sentenced the defendant to fourteen to eighteen years at MCI, Cedar Junction, for the voluntary manslaughter conviction and four to five years, to run concurrently, for the unlawful possession of a firearm conviction. His stated reasons were (1) the defendant used grossly excessive force and unnecessarily used excessive force; (2) the victim was not a violent individual despite testimony that he had bashed a stick against the defendant's home; (3) there was no evidence of violence in the victim's life — the fight between the victim and the defendant's cousin, Silveira, was only a fist fight; and (4) the killing was inexcusable, was not justified under any circumstances, and was grossly excessive.

[6]"If the appellate division decides that the original sentence or sentences should stand, it shall dismiss the appeal. Its decision shall be final." G. L. c. 278, § 28B.

the proposed sentencing guidelines. While the defendant suggests in his brief on appeal that the judge "explicitly stated that the severity of the defendant's sentence was based on his belief that the jury's verdict was erroneous," the judge in fact stated, "I deeply respect the verdict of the jury." Just as in *Commonwealth* v. *O'Connor*, 407 Mass. 663, 674 (1990), "the judge's remark was merely a restatement of the principle that the factors he considers in making a decision on sentencing are wholly distinct from, and much broader than, those a jury may take into account in making findings on guilt or nonguilt at trial." See *Commonwealth* v. *Derouin*, 31 Mass. App. Ct. 968, 970 (1992) (defendant's sentence was not based on improper considerations as the judge considered evidence of defendant's behavior, employment, character, and family life, nature of the offense, and circumstances surrounding the commission of the crime). Compare *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 663 (2000), quoting from *Commonwealth* v *LeBlanc*, 370 Mass. 217, 224 (1976), (judge's remarks created the appearance that the sentences may have been influenced by judge's belief that defendant's prior prison terms were inadequate because "a sentencing judge may not undertake to punish the defendant for any conduct other than that for which the defendant stands convicted in the particular case"); *Commonwealth* v. *McFadden*, 49 Mass. App. Ct. 441, 443-444 (2000) (trial judge who determined sentence based in part on his stated belief that the defendant perjured himself at trial created a substantial risk of miscarriage of justice). There was no error in the present case.

*Judgments affirmed.*