COMMONWEALTH *vs.* CARLOS HENRIQUEZ.

No. 01-P-1085.

Hampden. October 15, 2002. - December 18, 2002.

Present: JACOBS, COWIN, & KAFKER, JJ.

Further appellate review granted, 438 Mass. 1108 (2003).

*Rape. Indecent Assault and Battery. Obscenity,* Child pornography. *Practice, Criminal,* Sentence.

This court vacated the sentence that a Superior Court judge imposed on a criminal defendant after accepting his plea of guilty to charges of forcible rape of a child, indecent assault and battery upon a child, and child pornography, and remanded for resentencing before a different judge, where the sentencing judge expressly took into account uncharged conduct in determining the length of the defendant's sentence, where there were other troubling indicia of punishment for uncharged conduct, and where the judge gave no explanation that would put to rest the concerns that she had varied the sentence to punish the defendant for uncharged conduct. [778-783]

INDICTMENTS found and returned in the Superior Court Department on November 3, 1999.

A plea of guilty was accepted by *Tina S. Page, J.*

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*William M. Bennett,* District Attorney, *& Jane Davidson Montori & Thomas H. Townsend,* Assistant District Attorneys, for the Commonwealth, submitted a brief.

KAFKER, J. The issue presented is whether the defendant, Carlos Henriquez, who pleaded guilty to sex crimes against his seven year old daughter and received concurrent forty-five to sixty year sentences, was punished for uncharged as well as charged offenses.[1] We conclude that the defendant must be

---

[1] The defendant also contends that he was punished for not pleading guilty earlier, and therefore requiring the victim to prepare for trial. We conclude that there is no merit to this claim for the reasons stated in note 7, *infra.*

resentenced where (1) the judge stated that she took into account uncharged conduct in determining the length of her sentence without explaining her reasons for doing so, and (2) the record reveals other indicia of punishment for uncharged conduct.

The defendant was charged with forcible rape of a child (four indictments), indecent assault and battery upon a child (four indictments), and child pornography (one indictment). The indictments describe sex crimes taking place between May 1, 1999, and October 18, 1999. The evidence against the defendant included the defendant's admission to the police that "I would say I have done this about four times with her." There was also a videotape the defendant made of himself raping his daughter. On May 22, 2000, on the eve of trial, the defendant pleaded guilty.

At the plea hearing, the prosecutor described the victim's October 20, 1999, interview by Tom King, a psychologist working as a forensic interviewer for the district attorney's office. The victim was in second grade at the time of the interview and seven years old.[2] The prosecutor said the victim told King that "the defendant on numerous occasions penetrated her vaginally and . . . anally. She described these incidents as happening since first grade." The victim also told King that some of the incidents occurred in the morning before she left for school. When asked by the judge whether he disputed any of the facts presented by the Commonwealth, the defendant said he did not.

In recommending sentences of fifty to seventy years on the rape charges, the prosecutor said that she had considered the goals of punishment, deterrence, protection of the public, and rehabilitation, and she discussed each of them in her sentencing argument. She said: "In considering the punishment, I want you to understand that [the victim] has said that this abuse occurred for a couple of years. . . . These incidents occurred between the ages of five and seven." The defendant did not object to the prosecutor's statements.

Later in her sentencing recommendations, the prosecutor told the judge that "this man has not taken responsibility until today.

---

[2]Her birth date is not in the record before the court; we rely on the prosecutor's undisputed statements for this fact.

And it's important that you know that, because prior to today, I was prepared to go to trial, which meant that [the victim and her mother] had to be prepared to go to trial, which meant they spent Saturday at the District Attorney's office in a courtroom going through questions and having to relive this. . . . And the reason I bring that to your attention is because that's difficult for a child to relive, just as much as it is or as it was to experience."

The defendant's counsel sought a presentence investigation report, which was denied by the judge. He then emphasized that the defendant (1) was a first time offender; (2) was himself a victim of sexual and physical abuse as a child; (3) was devastated by the recent death of his brother, who had Down's syndrome; (4) financially supported his wife and three children; (5) had been experiencing marital difficulties; and (6) was remorseful and apologetic for his acts. Defense counsel recommended that the defendant be given concurrent ten to fifteen year sentences on the rape charges, and concurrent eight to ten year sentences on the indecent assault and battery on a child indictments, and ten years of probation on the child pornography charges. He stated that his recommendation exceeded the sentencing guidelines.[3]

The judge stated that the defendant had "ruined . . . many lives" and "absolutely destroyed" his daughter. She said, "pictures are worth a thousand words," and called the videotape, in which the defendant appeared to have a smirk on his face, "totally reprehensible." She further stated that "the thing that struck me most was not only the videotaping . . . but raping your daughter before she has to go to school. I mean, that . . . shows a level of dementia or of a mental problem that I guess is foreign to most of us. I acknowledge that there has been a cycle of abuse in your family, but that cycle has just ended, because you will never hurt another child again."

---

[3]The prosecutor has not objected to this statement. Nor have we been presented with any other information regarding what the recommendation would have been according to the guidelines. As set out in the sentencing guidelines grid included in the Report of the Massachusetts Sentencing Commission to the General Court submitted on April 11, 1996, forcible rape of a child for a defendant without a criminal record displays a range of 96 to 144 months. The General Court did not, however, adopt the guidelines, and they remain nonbinding.

After the clerk read the forty-five to sixty year concurrent rape sentences,[4] the judge said, "I did want to add that one of the reasons that I am deviating from the guidelines is because I do not believe that this was an incident that occurred four times. I do believe the child when she states that this has been going on for the last couple of years." The defendant did not object to any of the judge's statements at sentencing.

*Discussion.* It is black letter law in the Commonwealth that a defendant cannot be punished for uncharged conduct. See, e.g., *Commonwealth* v. *Goodwin*, 414 Mass. 88, 93 (1993). This means a judge may not "permit the sentence to vary because she thinks the defendant is guilty of [uncharged] misconduct." *Ibid.* Applying the rule in the instant case, however, requires an understanding of the uncharged conduct at issue and the purposes for which it can and cannot be used in sentencing.

The defendant was charged with, and admitted to, four forcible rape counts and other sex offenses against his seven year old daughter occurring between May and October, 1999. The uncharged conduct the judge considered involved the same victim and similar acts over a longer period of time. Although there is some confusion in the record, much of the uncharged conduct appears to be uncontested. The defendant stated at the plea hearing that he did not dispute the prosecutor's description of "numerous" rapes of the same victim dating back to the previous school year. *Id.* at 94-95 (the judge "gave the defendant the opportunity to challenge or rebut the information"). There were also no objections at sentencing when the Commonwealth and the judge described the defendant's conduct as having gone on for "a couple of years." *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 648, 656 (1977) ("If the defendant heard allegations by the Commonwealth which he considered false, we would expect that he would have tried to rebut them").

Nevertheless, although the point is not addressed by either the Commonwealth or the defense, the May to October, 1999, period charged in the indictments appears to include portions of

---

[4]The judge also sentenced the defendant to four concurrent terms of nine to ten years on the indecent assault and battery charges and ten to twenty years on the pornography charge, also to be served concurrently.

two school years. Incidents occurring while the victim was in first grade, or at the end of her first grade year, would be covered by some of the indictments. This is relevant because when the defendant was asked by the judge whether he disputed the facts recounted by the prosecutor, the prosecutor had only stated that the rapes had occurred when the child was in first grade. After the plea and during the sentencing process, however, the judge and the prosecutor went beyond the indictment period, describing the rapes as having occurred over "a couple of years." The prosecutor was even more expansive, stating that the rapes took place during the time the child was five to seven years old. Neither the defendant nor his counsel objected to these characterizations.

In sum, there appears to be some reliable information here, but it has not been tested by the indictment and trial process. Punishment is appropriate only for conduct of which the defendant has been charged and convicted.

This is not to say that the uncharged conduct cannot be considered at sentencing. If it is relevant and "sufficiently reliable," as this information is, it may be considered so long as it is used for the proper purposes and not to punish the defendant. *Commonwealth* v. *Goodwin*, 414 Mass. at 94. The care and restraint required for the proper use of uncharged conduct at sentencing is exemplified by *Commonwealth* v. *Goodwin*, *supra*, a case which also involves both a defendant pleading guilty to child rape and a trial judge considering uncharged conduct. The trial judge in *Goodwin* sentenced the defendant to two concurrent ten to fifteen year sentences in State prison on two rape convictions, but made clear that she was not considering uncharged conduct on these sentences. *Id.* at 91 n.2. She did, however, consider the uncharged conduct on the third rape conviction, in which she imposed a State prison sentence of from thirty to forty years, suspended for ten years.

The court stated that "[c]ertainly . . . the judge had the right to be concerned about the defendant's character and his amenability to rehabilitation. Recent scholarly studies emphasize the importance of understanding the full background of sexual offenders so that proper probationary and treatment terms can be established. Additionally, it is recognized that recidivism

rates among child molesters are particularly high. In fashioning the suspended sentence, [which included as a condition of probation that the defendant receive psychiatric treatment], the judge had in mind the protection of society and the kind of intensive treatment and supervision the defendant would need when he returned to 'outside' life.'' *Id.* at 93-94 (footnotes omitted). The trial judge's statement of reasons for the suspended sentence satisfied the court that "she did not consider the information about the defendant's past misconduct impermissibly to punish the defendant for crimes with which he had not been charged. Rather, she viewed the information as bearing on the defendant's character . . . .'' *Id.* at 94.

In *Goodwin*, care was therefore taken to ensure that uncharged conduct was only considered for appropriate purposes, and not punishment. Its use in sentencing was also restrained, and focused on probation terms and treatment during the period of suspended sentence.

In the instant case, after the sentence had been read by the clerk, the judge stated that "one of the reasons that I am deviating from the guidelines is because I do not believe that this was an incident that occurred four times. I do believe the child when she states that this has been going on for the last couple of years.'' The question is whether the judge took the uncharged conduct into account for appropriate purposes, see *ibid.*, or used it to further punish the defendant by enhancing his sentence.

The judge's comment is troubling because it can be read as a blunt statement of punishment for uncharged conduct; that is, the judge enlarged the sentence to punish the defendant for rapes occurring over "a couple of years" and not the five months encompassed by the indictments. Her direct connection of the uncharged criminal conduct to her deviation from the guidelines supports this reading. The judge apparently "permit-[ted] the sentence to vary because she [thought] the defendant [was] guilty of other misconduct.'' *Id.* at 93. This reading is supported by the Commonwealth's express and improper request that "[i]n considering the punishment, I want you to understand that [the victim] said that this abuse occurred for a couple of years.'' The defense also relies on the similarity, if not the symmetry, of the sentence recommended by the Commonwealth,

fifty to seventy years, which incorporated improper punishment considerations, and the sentence imposed by the judge, forty-five to sixty years. Together, these are all significant "indicia" of punishment for uncharged conduct. Compare *Commonwealth v. Johnson*, 27 Mass. App. Ct. 746, 752 (1989) ("We think the indicia of objective and legally acceptable criteria far outweigh the one indicator of vindictive sentencing").

Unlike the prosecutor, however, the judge did not expressly state that she was punishing the defendant for the additional acts. She also did not dwell on the point, and her statement was arguably only an afterthought. Nor did she adopt the Commonwealth's sentencing recommendation in toto. Compare *Commonwealth v. Alfonso*, 19 Mass. App. Ct. 599, 609-610 (1985) (no resentencing ordered where judge adopted sentence proposed by prosecution but not improper reasoning), with *Commonwealth v. Monzon*, 51 Mass. App. Ct. 245, 256 (2001) (resentencing ordered where judge adopts sentencing recommended for improper reasons by prosecution in toto without explanation). The sentence itself, although exceeding the guidelines, which are, of course, not mandatory, did not exceed the "permissible statutory limits." *Commonwealth v. McCravy*, 430 Mass. 758, 767 (2000). Such a sentence, without more, is not our concern. *Ibid.* We are, nonetheless, left with serious doubts about what the judge's final remarks reveal about the basis for the sentence imposed.

In the absence of any explanation from the judge of her statement, we examine in their entirety other comments she made at sentencing to see if they provide the necessary context for discerning the reason for her consideration of the uncharged conduct. Although her concerns are for the most part appropriate, and could justify the sentence she imposes, they do not inform us of her reasons for considering the uncharged conduct. The relevance to sentencing of the additional rapes of the same child is never explained. Nor is her consideration of the uncharged conduct put in any particular context. Unlike the prosecutor, the judge did not expressly indicate whether she was considering punishment, deterrence, protection of the public, or rehabilitation of the defendant. See generally *Commonwealth v. White*, 436 Mass. 340, 343 (2002). She also did not refer or al-

Commonwealth v. Henriquez.

lude to the uncharged conduct when she discussed the family devastation, pain, or reprehensible aspects of the crime, which would appear to be classic bases for punishment[5]; nor did she refer or allude to the uncharged conduct when she emphasized that the defendant would "never hurt another child again," a valid protection of the public concern. Likewise the uncharged conduct is absent from consideration when she describes his "smirking" on the videotape, which may reflect on character. In the area of amenability to rehabilitation or treatment, there is also no discussion of the uncharged conduct, just the judge's connection of the videotape and the rapes before school, to a "level of dementia or of a mental problem that is foreign to most of us."

Ultimately, we have (1) a judge who has expressly taken uncharged conduct into account in determining the length of the sentence, (2) other troubling indicia of punishment for uncharged conduct, and (3) no explanation by the judge that would put to rest the concerns that she varied the sentence to punish the defendant for uncharged conduct. Where the record is so suggestive of punishment for improper reasons, resentencing has been required. See, e.g., *Commonwealth* v. *Mills*, 436 Mass. 387, 401 (2002) ("review of the record of the sentencing hearing strongly suggests that the judge's personal feelings interfered with his sentencing decision").[6] We conclude that "[t]he appearance and interests of justice will be better served by resentencing." *Commonwealth* v. *Lebron*, 23 Mass. App. Ct. 970, 972 (1987). *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 664 (2000), *S.C.*, 436 Mass. 340 (2002). We emphasize

---

[5]It was appropriate for the judge not to consider uncharged conduct here.

[6]See *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 224-225 (1976) ("we think that the defendant *may have been prejudiced* unfairly by the judge's inquiry into the details of the [uncharged offense] and that justice would be better served if the defendant were resentenced"); *Commonwealth* v. *Banker*, 21 Mass. App. Ct. 976, 978 (1986) ("We *cannot tell with certainty* which considerations motivated the judge's remarks in this case"); *Commonwealth* v. *Lewis*, 41 Mass. App. Ct. 910, 911 (1996) ("The judge's comments *suggest* that the defendant was punished for untried offenses"); *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 663 (2000), *S.C.*, 436 Mass. 340 (2002) ("The judge's remarks . . . *create the appearance* that the sentences may have been influenced by his belief"); *Commonwealth* v. *Monzon*, 51 Mass. App. Ct. at 256 ("the judge *may well have considered* veracity as a factor in imposing the sentences") (emphasis supplied throughout).

that judges commenting on uncharged conduct and taking it into account in the sentence need to carefully explain their reasons for doing so and respect the limited purposes for which this type of information can be considered.

The final question is whether resentencing should be done by the same or a different judge. As this sentencing occurred after a guilty plea, another judge will not be at a disadvantage for not having observed a trial. We, therefore, remand for purposes of resentencing before another judge. See *Commonwealth* v. *Banker*, 21 Mass. App. Ct. 976, 978-979 (1986).[7]

*So ordered.*

---

[7]For the purposes of resentencing we also comment on the defendant's second argument, that he was punished for delaying his guilty plea and thereby requiring the child victim to prepare for trial. To prove the defendant's incorrigibility, the prosecutor waded into another problematic area, arguing that his last-minute plea demonstrated that he had not taken responsibility for his actions until the day of trial, and indicated his lack of concern for his daughter by forcing her to "relive" the rape. Her argument appears to be directed at counteracting favorable consideration of the defendant's willingness to admit guilt or prevent public embarrassment to the victim, see *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. at 750-751; *Commonwealth* v. *Jiminez*, 27 Mass. App. Ct. 1165, 1167 n.6 (1989); however, this approach also implicates his right to proceed to trial. *Commonwealth* v. *Souza*, 390 Mass. 813, 818 (1984). See *Commonwealth* v. *Banker*, 21 Mass. App. Ct. at 977-978 (explaining the important difference "between punishing the defendant for trauma caused by the crime and punishing him for a consequence incidental to his claim of a constitutional right to have a jury decide his guilt"). As the judge did not rely on this ground or even mention it in her sentencing, we conclude that the prosecution's argument on this point, even if it were error, did not present a substantial risk of a miscarriage of justice.