## Commonwealth *vs.* Carlos Ortiz.

No. 03-P-977.

Essex. April 15, 2004. - July 13, 2004.

Present: Cypher, Grasso, & Kafker, JJ.

*Robbery. Alibi. Evidence,* Absence of witness, Alibi. *Practice, Criminal,* Instructions to jury.

At the trial of an indictment charging armed robbery, the judge erred in giving a "missing witness" instruction regarding a potential alibi witness, where the record before the judge did not establish a sufficient foundation for such an instruction, in that the case against the defendant was not strong, the missing witness's testimony would have been cumulative, no evidence suggested that the defendant had superior knowledge as to the whereabouts of the witness, and it could not be said that the defendant had failed to call the witness in the sense contemplated by such an instruction. [470-473]

INDICTMENT found and returned in the Superior Court Department on June 6, 2001.

The case was tried before *Richard E. Welch, III,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Carlos Ortiz, appeals from his conviction for armed robbery. The defendant advanced an alibi defense. He claims, and we agree, that the judge erred by giving a "missing witness" instruction regarding a potential alibi witness.[1]

1. *Background.* A jury could have found the following facts.

---

[1]The defendant also claims that the judge erred by allowing the jury to consider the defendant's girlfriend's failure to tell the police about the alibi. On the result we reach, we need not consider the issue. However, should the issue recur at a new trial, the requirements of *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288, 295-297 (1981), will need to be satisfied before the Com-

At around 10:00 P.M., on April 30, 2001, Oscar Reynoso was working a shift as a pump attendant at a service station in Lynn. His wife was keeping him company in the gasoline station office.

A light-colored Toyota Corolla station wagon with an off-color hood entered the station and pulled into the far corner of the garage. Reynoso left the office, out of his wife's view, to attend to the customer.

The station wagon was familiar to Reynoso and he recognized the defendant, who was the driver, as a regular customer. He did not recognize the passenger. The defendant asked Reynoso to check his oil, but when Reynoso approached the car, the defendant pushed him, told him not to move, and drew a pistol from his waistband. The defendant handed the pistol to his passenger, who held the gun to Reynoso's abdomen. The defendant reached into Reynoso's pocket and took $360 of the station's money. He also took $45 to $50 from Reynoso's wallet. The defendant told Reynoso not to move, "because if you do I know who you are and I will go and I will kill you."

After the assailants left, Reynoso returned to the office and told his wife what happened. He telephoned his manager, Juan Valera, who returned to the gasoline station. Valera sent Reynoso home without contacting the police because Reynoso was ill with fear and the defendant had threatened to kill him. Valera reported the robbery to the police the next day and Reynoso gave a statement to the police.

Two weeks later, the police visited the gasoline station and showed Reynoso a photographic array. Valera translated for Reynoso and Reynoso identified the defendant immediately, saying "That's the guy. That's the guy that robbed [me]."

The theory of the defense was alibi. The defendant also advanced the theory, through opening remarks and cross-examination, that Reynoso was not credible because it was unlikely that the defendant would rob a gasoline station where he was well known and that Reynoso had fabricated the story to cover up his own thefts from the station.

monwealth may pursue such a line of questioning. See *Commonwealth* v. *Gregory*, 401 Mass. 437, 444-445 (1988), and cases cited.

The defendant testified that he bought gasoline once or twice a week for about six months at the gasoline station where Reynoso worked. He always went to that station because he sometimes was short of money and Reynoso would allow him to pay later.

The defendant and his girlfriend, Marievett Ortiz, testified that on the night of the robbery, they had attended a party given by their next-door neighbors, Mario Rodriguez and Michael Banville. They went to the party around 9:15 or 9:30 P.M. and left at around 3:00 A.M. According to Marievett Ortiz, she was with the defendant the entire night.

The defendant testified that, although he had considered Rodriguez to be both a neighbor and a friend, he had not talked to him recently.

2. *The missing witness instruction.* Although the Commonwealth's proposed jury instructions did not include a request for a missing witness instruction, during the charge conference, the judge indicated that he would not give a missing witness instruction regarding Banville, but he would give one regarding Rodriguez.[2] The defendant objected, asserting that he had spoken with Rodriguez earlier, had prepared him to testify, and had notified him to be present. He advised the court that Rodriguez had been served with a subpoena.[3] He did not know why Rodriguez had not appeared. Counsel did not seek a bench warrant, stating, "[I]t doesn't appear that I know where I can find him." Defense counsel also had believed that Marievett Ortiz would bring Rodriguez to court.[4]

In light of the judge's ruling that a missing witness instruction would be given, the prosecutor argued in closing that the

[2]Before the judge impaneled the jury, defense counsel told the judge that Banville, who was on the prospective witness list, would be unavailable for medical reasons. The judge offered to continue the trial, but the defendant expressed a desire to go forward.

[3]The defendant, the Commonwealth, and the judge believed that Rodriguez had been subpoenaed. While the appeal was pending, defense counsel corrected the record to indicate that he had been mistaken and that Rodriguez had not, in fact, been subpoenaed.

[4]Defense counsel told the court that Marievett Ortiz had tried to talk to Rodriguez but had not been able to find him at home and did not know where he worked.

jury could draw an adverse inference from Rodriguez's absence. The judge then instructed the jury that they could draw an adverse inference from the fact that Rodriguez had not been called by the defense as a witness.

"Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party." *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134 (1986). Such an inference can have "a seriously adverse effect on the noncalling party." The jury should, therefore, be invited to draw an adverse inference against a party where a witness has not been called "only in clear cases, and with caution." *Ibid.* "Circumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights." *Id.* at 135. See *Commonwealth* v. *Crawford,* 46 Mass. App. Ct. 423, 425 (1999) (describing the opinion in *Schatvet* as the "classic statement on this subject").

Before allowing a prosecutor to argue that an adverse inference is warranted, a judge must make a ruling, "as matter of law, that there is a sufficient foundation for such inference in the record." *Commonwealth* v. *Alves,* 50 Mass. App. Ct. 796, 802 (2001), quoting from *Commonwealth* v. *Spencer,* 49 Mass. App. Ct. 383, 387 (2000). "In determining whether a sufficient foundation exists, the judge is to consider four factors: (1) whether the case against the defendant is [so strong that,] faced with the evidence, the defendant would be likely to call the missing witness if innocent; (2) whether the evidence to be given by the missing witness is important, central to the case, or just collateral or cumulative; (3) whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness; and (4) whether the party has a 'plausible reason' for not producing the witness." *Commonwealth* v. *Alves, supra.* We think that the foundation, on the record before the judge, was not sufficient to support a missing witness instruction.

With regard to the first factor, we note that the case, viewed in its entirety, is strong only if Reynoso's testimony was credited over the testimony of the defendant and Marievett Ortiz. Contrast *Commonwealth* v. *Rollins*, 441 Mass. 114, 118-119 (2004). Further weakening the Commonwealth's case was the fact that the Commonwealth's witnesses were impeached with prior inconsistent statements.

As to the second factor, Rodriguez's testimony would have been cumulative of Marievett Ortiz's testimony. Thus, this is not a case where no corroborative testimony was offered to support the defendant's testimony. Contrast *Commonwealth* v. *Bryer*, 398 Mass. 9, 13 (1986) (defendant testified concerning the amount of alcohol he had consumed, but called no additional witnesses, though his roommate could have corroborated portions of the defendant's own exculpatory version of events); *Commonwealth* v. *Perryman*, 55 Mass. App. Ct. 187, 199 (2002), quoting from *Commonwealth* v. *Thomas*, 429 Mass. 146, 152-153 (1999) (defendant's girlfriend legitimately designated a "missing witness" because she "[w]ould have been expected to offer testimony . . . that 'could not be duplicated' by any other witness").

With regard to the third factor, consideration of "whether the defendant had superior knowledge as to the identity or whereabouts of the witness," *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 804, there is no evidence that Rodriguez was "any more available to the [defendant] than to the [Commonwealth]." *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992), *S.C.*, 422 Mass. 72 (1996). There is nothing in the record to indicate that the absent witness was "peculiarly under the influence of the defendant or peculiarly related in interest to him." *Commonwealth* v. *Spencer*, 212 Mass. 438, 451 (1912). The Commonwealth was aware of the existence of Rodriguez and of his last known address. He appears to have been equally available to both sides. In such circumstances, this factor does not favor drawing an adverse inference against the defendant for Rodriguez's failure to appear. *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 804.

Finally, with regard to the last factor, "the inquiry is whether, based on 'ordinary logic and experience,' there was a 'plausible

reason' for" Rodriguez's absence. *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 804, quoting from *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 244 (1990), *S.C.*, 418 Mass. 562 (1994), cert. denied, 513 U.S. 1091 (1995). Defense counsel believed that he had served Rodriguez with a subpoena.[5] In such circumstances, it cannot be said that the defendant failed to call Rodriguez in the sense contemplated by the missing witness instruction.

"This is not a case where a party has wilfully attempted to withhold or conceal significant evidence by refusing to call an available witnesses." *Commonwealth* v. *Lo*, 428 Mass. 45, 51 (1998). There is nothing in the record which suggests that Rodriguez disavowed his prior statements supportive of the defendant's alibi.[6] The inference argued by the prosecutor and reinforced by the jury instructions unfairly encouraged the jury to weigh Rodriguez's absence heavily against the defendant. The circumstances here did not present the "clear" case required by *Schatvet* before such an instruction may be given.

*Judgment reversed.*

*Verdict set aside.*

---

[5]Although it is arguable that the defendant should have done more to obtain Rodriguez's presence, it appears that counsel believed any such attempt would be futile. Moreover, counsel was not made aware that the instruction would be given until both sides had rested.

[6]Rodriguez had been interviewed by an investigator and had corroborated Marievett Ortiz's representation that the defendant was at his party on the night in question.