## Commonwealth *vs.* Keith D. Correia.

No. 04-P-622.

Bristol. September 13, 2005. - November 2, 2005.

Present: Laurence, Kafker, & Trainor, JJ.

*Assault with Intent to Kill. Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Comment by prosecutor.

At a criminal trial, the judge's instructions adequately cured any prejudice that might have arisen from the display of a photograph of the victim's wound during much of the prosecutor's argument [30-31], as well as from comments by the prosecutor during his closing suggesting that the defendant had used a double-edged knife [31] and that the defendant's conduct was shocking [31-32]; moreover, the prosecutor did not err in commenting on the implausibility of the defendant's claim of accident [32-38].

Indictments found and returned in the Superior Court Department on November 15, 2001.

The cases were tried before *David A. McLaughlin,* J.

*James R. Knudsen* for the defendant.

*Karen O. Young,* Assistant District Attorney, for the Commonwealth.

Laurence, J. Convicted of armed assault with intent to kill (G. L. c. 265, § 18[b]),[1] and assault and battery by means of a dangerous weapon (a knife) (G. L. c. 265, § 15A[b]), the defendant, Keith D. Correia, makes a sole appellate challenge to several comments by the prosecutor in closing argument, which he asserts were improper and prejudicial. We affirm.

*Background.* The jury could have found the following facts. In the early morning (about 1:00 a.m.) of September 13, 2001, Carlos Costa went from his second-floor apartment in New Bedford into the unlit, "pitch black" backyard of the apartment house in pursuit of his sister's puppy, a six month old miniature

---

[1]The original indictment had been for armed assault with intent to murder.

pug named Pudgy, who had run down the stairs and into the yard. As he followed Pudgy's bark, he heard someone say, "Get the fuck out of here before I kick you." Costa said into the darkness, "It's only a puppy," and then came upon the defendant (whom he did not know but recognized as a daily visitor to the neighborhood, speeding in and out on his moped). The defendant replied to Costa, "Get the fuck out of here before I stab you." Costa said, "Whatever," and continued walking toward the street. Hearing a sound, he turned to see what it was and immediately felt a knife being plunged into his stomach and then pulled out. The defendant had come up from behind and, as Costa turned, had stabbed him.

Having heard the events outside, Costa's mother and sister came downstairs and saw Costa and the defendant facing each other, Costa bleeding profusely from his wound and the defendant holding a knife covered with blood. The defendant turned and mounted his moped, ignoring the sister's demand that he not leave, and raced out of the backyard. He momentarily lost control of his vehicle, crashed into something, and fell over, but then hopped back on and rode off, as Costa's sister hurled a rock at him. The police and an ambulance soon arrived and took Costa (who had fallen to the ground and felt faint) to the hospital, where he underwent surgery for a pierced liver and spent five days recovering from his wound.

The police spent over a month searching for the defendant, who had been unhesitatingly identified by Costa and his sister and who never returned to the neighborhood after the incident. He could not be located by the police, despite constant searches for him and several visits to his last known addresses without success. He was finally arrested when encountered in the New Bedford District Court house sitting outside the probation office.

In a statement to the police, the defendant said that he had been visiting a friend and was in the backyard repairing his moped with his pocket knife when the dog charged up to him, barking and nipping at his legs. A man (he did not recognize Costa) then came up to him, saying, "Don't yell at my dog." While he was bending over at the waist to slash at the dog with his knife, he was struck in the back by the man. Swinging his

body up, he noticed blood coming from and running down the man's shirt and chest. He then left as two women ran toward him, yelled at him, and threw a rock at him. Asked by the police if he had stabbed the man, the defendant responded, "Maybe I did," but could not recall one way or the other. He claimed that the knife must have fallen out of his pocket as he rode home that night. At trial, the defendant (who did not testify) relied primarily on this statement (to which the arresting officer testified) as the basis for his defense of accident. His counsel conceded that the defendant had stabbed Costa but had done so accidentally while holding the knife to ward off the puppy nipping at his legs, as a reflexive response to Costa's having struck him in the back.[2]

*Discussion.* The defendant faults the prosecutor for four alleged errors in his closing argument, to all of which he objected: (1) leaving the photograph of Costa's abdominal wound (characterized as "graphic" and "grisly" by the defendant) on the court room's television monitor for much of his argument; (2) asserting that the nature of Costa's wound suggested that the defendant had used "a double-edged knife"; (3) deriding the defendant's theory of accident by saying:

> "An accident, you apologize. You don't flee, when [Costa's mother and sister] tell him to wait, and he knows that the police are coming. He gets on his moped and drives away not to be seen again at that address ever, although he had been a frequent visitor. He doesn't know what he did? He doesn't have a guilty knowledge of what he did?"

and (4) telling the jury:

> "You know from your life experience that there are people in this world whose paths we would choose not to cross. In the daytime we see them, and we know to keep clear of them. And if we were unfortunate enough as human be-

---

[2] In closing argument, defense counsel had contended that the stabbing had been either accidental or committed as a response to provocation in the heat of passion or sudden combat, both theories aimed at negating the requisite element of specific intent to murder. His appellate argument addresses solely the theory of accident.

ings to bark at them, or in Pudgy's case bark at them, they would just as soon stab you as look at you. . . . Carlos Costa didn't know that when he went into the backyard and ran into Keith Correia, that he was one of those people. But you know from the evidence in this case that he is."[3]

The defendant contends that by this latter comment the prosecutor was arguing that the jury should consider the defendant's "bad character," as a violent person who stabbed people frivolously, and as evidence that he was predisposed to and did commit the crimes charged. We agree, however, with the Commonwealth that the challenged conduct of the prosecutor during his closing either was within the bounds of proper argument or could not have prejudiced the defendant.

1. As to the display of the photograph, which the defendant attacks as "calculated to appeal to the jury's sympathy," the trial judge expressly found that "the Commonwealth did not unduly dwell on it. In fact, he moved it different times so the jury was not even looking at the television. I watched that. It was on my screen, but their eyes were following — as usual, they follow both of you when you make final argument." Moreover, as the judge noted, and defense counsel acknowledged, "[t]he jury will have it for a longer time in front of them while they deliberate."

In any event, " 'whether the inflammatory quality of a photograph outweighs its probative value and precludes its admission is determined in the sound discretion of the trial judge.' *Commonwealth* v. *DeSouza*, 428 Mass. 667, 670 (1999), and cases cited. 'In order to find an abuse of discretion, "it is necessary to decide that no conscientious judge, acting intelligently, could honestly have taken the view expressed by [her]." ' *Commonwealth* v. *Jaime*, 433 Mass. 575, 579 (2001), quoting *Commonwealth* v. *Medeiros*, 395 Mass. 336, 351 (1985). The defendant has failed to [address, much less] meet[,] this heavy burden." *Commonwealth* v. *Anderson*, 445 Mass. 195, 208-209 (2005).

---

[3]The defendant did not object at trial to a subsequent statement by the prosecutor that "it takes a special kind of person to take a knife and sleeve it into a person's body," but on appeal assigns it as an error as egregious as that just quoted.

We note that the defendant did not request any instruction as to the use of the photograph or object to the judge's stated intention not to give any such instruction. Finally, the judge appropriately mitigated any potential prejudice by cautioning the jury at least four times that they could not base their verdicts on sympathy or the nature of the crimes charged. See *Commonwealth* v. *Pearce*, 427 Mass. 642, 645-646 (1998); *Commonwealth* v. *Kent K.*, 427 Mass. 754, 761 (1998); *Commonwealth* v. *McLaughlin*, 431 Mass. 506, 511 (2000).

2. As to the prosecutor's suggestion that the defendant had used a "double-edged knife," the judge concluded that no such inference could be drawn from the photographic evidence of the wound, a subject that required expert testimony, and explicitly directed the jury that they could not infer the use of such a knife because there was insufficient evidence on which to base it. Consequently, even if error occurred, it was fully corrected and could not have influenced the jury. See *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978); *Commonwealth* v. *Pillai*, 445 Mass. 175, 190 (2005) (jury presumed to follow judge's instructions).[4]

3. The defendant's attack on the prosecutor's mocking of his claim of accident (by referring to his flight after the stabbing when he knew the police were coming and his consciousness of guilt) fails. Prosecutors are entitled to argue theories supported by the evidence and to suggest fair inferences from the evidence (which inferences need only be reasonable and possible, not necessary or inescapable). See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516 (1987); *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993); *Commonwealth* v. *Christian*, 430 Mass. 552, 564-565 (2000).

The prosecutor's statements here did not exceed the bounds of fair inference from the evidence, and the jury — admonished by both the judge and counsel to apply their common sense and experience in their deliberations — did not have to engage in

---

[4]Since the defendant objected to this and the other challenged remarks, except as described in note 3, *supra*, the standard of review is "prejudicial error," i.e., "whether we can say with fair assurance that the error 'did not influence the jury, or had but very slight effect.' " *Commonwealth* v. *McCoy*, 59 Mass. App. Ct. 284, 290 (2003), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

Commonwealth *v.* Correia.

impermissible conjecture in order reasonably to draw the commonsense inference suggested by the prosecutor, that the defendant had guiltily fled the scene and knew that the police were coming. This was rationally inferable from the evidence that the defendant had already threatened to stab Costa without reason or provocation; that he was aware he had seriously injured Costa from Costa's verbal and physical reactions and the copious flow of blood (which stained Costa's clothing and the ground); that he had to have realized that the police would be summoned to respond to and investigate such a serious, arguably criminal, and potentially life threatening incident; that despite being told he had to stay, he immediately left the scene in a precipitate manner that indicated a determined effort to escape the consequences of his action; and that his culpable state of mind on that occasion could be inferred from his subsequent conduct, in never returning to a neighborhood he had previously been visiting daily, and in being absent from all of his known addresses for weeks as the police searched for him in vain. (As to the latter point, see *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434 [2001], and cases cited.)[5]

Finally, when examined in context, the prosecutor's remarks could reasonably be viewed by the jury as fairly commenting on the inherent implausibility or unreliability of the defendant's claim of accident. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 457 (1988); *Commonwealth* v. *Moore*, 408 Mass. 117, 128 (1990). Cf. *Commonwealth* v. *Glass*, 401 Mass. 799, 807 (1988) ("As an attack on the defendant's self-defense contention, expressed as hyperbolic ridicule, the argument was arguably tolerable"). There was no impropriety.[6]

4. The prosecutor's challenged statement regarding the

---

[5]The defendant asserts that the prosecutor's reference to flight disregarded earlier rulings by the judge as to the issue of flight; but when examined in context, those rulings involved other evidentiary issues and were, in any event, ambiguous. What is clear is that the judge did not sustain the defendant's objection to this line of argument, the defendant did not move for a mistrial, and he did not request any curative instructions as to the issue. See *Commonwealth* v. *Simmons*, 419 Mass. 426, 434-436 (1995); *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 932, 933 (1983).

[6]Even if these prosecutorial statements could be deemed error, given the strength of the Commonwealth's case against the defendant, the judge's careful and correct instructions, the defendant's expressed satisfaction with those

defendant being "one of those people" who "would just as soon stab you as look at you," appears problematic only when wrenched out of context from the prosecutor's initial point (that we all recognize the danger of violence from certain types of people because they take disproportionate offense at trivial matters) and his culminating observation (that the jury would be able to identify the defendant as such a person from the evidence). See discussion, *supra*. Rather than a gratuitous comment on the defendant's violent character, as the defendant contends, it was a fair, if hard, blow arising from the frightening circumstances of the case: a man walking in his own backyard is threatened with stabbing without cause by a total stranger, retreats, then unexpectedly has a knife plunged into his abdomen and is left, gravely wounded and heavily bleeding with a life threatening injury, by the stranger, who takes time to withdraw the knife and then disappears into the night. A reasonable juror could view such a senseless, unprovoked, unexpected, and savage attack as an exceptionally cruel and vicious act reflecting callous indifference to the sufferings of others, and as particularly cold blooded by reason of the use of a knife, which requires close contact with the victim.

Viewed in context, the prosecutor's remarks would have been seen by a rational juror as directed not at the defendant's character but at his shocking conduct, in legitimate response to the defendant's improbable alternative claims of accident or provocation and lashing out in the heat of passion. The defendant's cold and calculated behavior was also circumstantial evidence of his purposeful state of mind, a proper subject for argument given the Commonwealth's burden of establishing the specific intent required to prove assault with intent to cause death. See *Commonwealth* v. *Nardone*, 406 Mass. 123, 131 (1989). It could also be fairly deemed the type of wanton or reckless conduct resulting in harm to another that is the legal equivalent of intentional conduct for purposes of establishing

instructions, and his failure to have requested further instructions (see note 7, *infra*, and accompanying text) allow us to say with fair assurance that the remarks did not so affect the jury's deliberations that any significant prejudice could have resulted. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 107-108 (1997); *Commonwealth* v. *Jackson*, 428 Mass. 455, 461 (1998); *Commonwealth* v. *Perry*, 15 Mass. App. Ct. at 933.

assault and battery by means of a dangerous weapon. See *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 273-277 (1983).

As our appellate courts have frequently observed, "[w]e have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence," *Commonwealth* v. *Kozec*, 399 Mass. at 516, and " 'enthusiastic rhetoric, strong advocacy, and excusable hyperbole' are not grounds for reversal." *Commonwealth* v. *Wilson*, 427 Mass. 336, 350 (1998), quoting from *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997). To the degree the prosecutor's statement could be deemed "inflammatory, that was inherent in the odious and brutal nature of the crime[] committed." *Commonwealth* v. *Ingram*, 14 Mass. App. Ct. 999, 999 (1982) (armed assault, aggravated rape, armed robbery). "To the degree that the argument might have warmed the passions of the jury, it did so by reference to [the evidence] that, when recalled, would have that effect. That is permissible." *Commonwealth* v. *Garofalo*, 46 Mass. App. Ct. 191, 194 (1999) (assault and battery). Accord *Commonwealth* v. *Lyons*, 426 Mass. 466, 472-473 (1998) (murder by stabbing).

Thus, closing arguments by prosecutors that have been challenged as prejudicial character attacks in such cases as the following have been viewed indulgently by our courts (at least where the judge gave proper instructions and the Commonwealth's case was strong: *Commonwealth* v. *Anderson*, 411 Mass. 279, 285-287 (1991) (on charge of assault and battery by means of a dangerous weapon, a razor, by one prison inmate on another, prosecutor's characterization of the prison as a "sewer" and of defendant as one of "the kind of people you are dealing with" who made the prison a sewer, held permissible as supported by the evidence and as "a dramatic flourish that was probably not meant to be taken literally. The jury undoubtedly were aware that the prosecutor was arguing his view, and they had the capacity to discount hyperbole"); *Commonwealth* v. *Dixon*, 425 Mass. 223, 230-231 (1997) (on charge of murder by shooting, prosecutor's referring to the defendant and his witnesses as "these people" who come from "a world unlike anything you've ever experienced . . . a whole different planet . . . hav[ing] a whole different moral code," had a foundation

in the evidence, reflected the prosecutor's effort to ask "the jury to make the imaginative leap to understand a world different from their own and to judge fairly"; and "constituted permissible argument"); *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 10-11, 14 (1993) (on charges of child molestation, prosecutor's references to defendant and his character witnesses — "[D]on't we all know people who are unsavory . . . [but] who can get a parade of [character witnesses] to come in . . . . [That is based on] behavior that is subject to public scrutiny . . . . This is why people like Mr. Deveau get children involved, and get their confidences . . . . [They] do it in secret" — held unremarkable, because they amounted to an assertion "that the defendant had committed acts of child molestation, but that, of course, was the government's position as prosecutor, and it is hardly likely that the jury would have been misled . . . . We are prepared to credit the jury with common sense which would enable them to hear the . . . statement[s] as a rhetorical flourish in aid of the argument"); *Commonwealth* v. *Murphy*, 442 Mass. 485, 496 (2004) (on charge of murders by stabbing, prosecutor's statement, that the defendant "murdered both of these people in cold blood," was "based on the evidence and [was] not inappropriate," given the fact that the evidence "permitted an inference that the murders were unprovoked, senseless, and brutal"); *Commonwealth* v. *Wilson*, 427 Mass. at 352 (on charges of murder by stabbing and assault by means of a dangerous weapon, prosecutor's references to the defendant as "a triple murderer . . . 'did not cross the line between fair and improper argument,' " because "the jury are presumed to know 'that the prosecutor is an advocate' and to be able to recognize his arguments as advocacy" [citations omitted]); *Commonwealth* v. *Stewart*, 411 Mass. 345, 357 (1991) (on charge of murder, prosecutor's multiple references to the defendant's participation in the cruel shooting of a cat just before the shooting of the victim, claimed to have inflamed the jury, "involved some hyperbole but nothing beyond the ability of the jury to discount"). See generally note 8, *infra.*

Even if a prosecutor's closing argument is objected to and subsequently deemed improper, no cognizable prejudice is created when, in light of the entire record, the Commonwealth's

case is strong and the trial judge's instructions have mitigated or cured any error that could have deprived the defendant of a fair trial. See *Commonwealth* v. *Kozec,* 399 Mass. at 518, 522-523 & n.15; *Commonwealth* v. *Daley,* 439 Mass. 558, 567 (2003). Both factors are present in this case and mandate rejection of the defendant's contentions. The Commonwealth's case that the defendant had committed the crime charged, supported by uncontradicted eyewitnesses — as well as the defendant's admission (through counsel) that he had indeed stabbed Costa — was overwhelming, while the defendant's story of accident or provocation was implausibly weak, particularly given his evasive conduct after the stabbing and the lack of any testimony supporting such theories.

Even more significant for the negation of prejudice were the judge's impeccable instructions, most significantly his admonishing the jury no less than five separate times (both at the beginning and at the end of the case) that the arguments of counsel were not evidence and could not be considered by them as evidence, while separately cautioning them multiple times that the only evidence they could consider consisted of the testimony of the witnesses at trial and the admitted exhibits; that they were to decide the case solely on that evidence; that anything counsel or the judge himself may have said that was contrary to the jury's recollection of the evidence was to be ignored; and that they could not let their consideration of the evidence be swayed by any sympathy, prejudice, or personal feelings. Further, he repeatedly instructed them concerning the presumption of the defendant's innocence, the Commonwealth's unremitting burden of proof, the requirement that such proof be beyond a reasonable doubt, and that the burden never shifts to the defendant.

In light of those comprehensive charges, as well as the defendant's failure to have sought further or curative instructions on any of the arguments claimed to have been improper,[7] we can confidently conclude that the judge's careful instructions adequately cured any prejudice that could be argued to

---

[7]See *Commonwealth* v. *Toro,* 395 Mass. 354, 360 (1985) (the absence of a request for such instructions indicates that "the now challenged aspects of the prosecutor's argument were not unfairly prejudicial"). Cf. *Commonwealth* v. *Perry,* 15 Mass. App. Ct. 932, 933 (1983) (even though defendant objected to

have arisen from the prosecutor's arguments.[8] See, in addition to the case cited above, *Commonwealth* v. *Stone*, 366 Mass. 506, 515-516 (1974); *Commonwealth* v. *MacDonald*, 368 Mass. 395,

the prosecutor's remarks, when he did not ask for curative instructions or make any objection to the instructions given pertaining to closing arguments, he "cannot now be heard to complain about the instructions").

[8]Not only is it a fundamental premise of our system of criminal justice that the jury will pay heed to and follow the judge's instructions, see *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978); *Commonwealth* v. *Barbosa*, 399 Mass. 841, 849 (1987); *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231-232 (1992); but our law also presumes (as the cases cited above illustrate) (a) that the jury are aware (when properly instructed, as they were here) that "closing argument is identified as argument . . . [and] is not evidence," *Commonwealth* v. *Kozec*, 399 Mass. at 517; (b) that "the jury should realize that the statements of counsel are arguments and not dispassionate recitations of fact," *Commonwealth* v. *Loguidice*, 420 Mass. 453, 456 (1995); (c) that "[t]he jury [can] be expected to take [closing] arguments with a grain of salt," *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982); (d) that the jury — charged with using their common sense and experience — are aware that the prosecutor's position is that the defendant being tried committed the acts with which he is charged, *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. at 11; (e) that "the jury know[] that the prosecutor is an advocate and [they] may be expected . . . to discount [overzealous] remarks as seller's talk," *Commonwealth* v. *Coleman*, 366 Mass. 705, 714 (1975) (citations omitted); (f) that jurors are "able to recognize [the prosecutor's] arguments as advocacy and not statements of personal belief," *Commonwealth* v. *Wilson*, 427 Mass. at 352, and, "aware that the prosecutor was arguing his view, . . . [are able] to discount [prosecutorial] hyperbole," *Commonwealth* v. *Anderson*, 411 Mass. at 287; and (g) that the jury possess "[a] certain measure of . . . sophistication in sorting out excessive claims on both sides," *Commonwealth* v. *Kozec*, 399 Mass. at 517, particularly the capability of "sorting out [both] hyperbole and speculation." *Commonwealth* v. *McLaughlin*, 431 Mass. at 512. There are, of course, cases in which the judge's instructions are not pointed enough to neutralize claimed errors in the prosecutor's argument. See, e.g., *Commonwealth* v. *Shelley*, 374 Mass. 466, 469-471 (1978) (prosecutor characterized defendant's expert psychiatric witnesses in murder case, in disclaimer form, as "bought," "mercenary soldiers," and "prostitutes," but judge did not give curative instructions and the Commonwealth's case was not overwhelming); *Commonwealth* v. *Kelly*, 417 Mass. 266, 269-272 (1994) (in a case "close . . . on the facts," the prosecutor supported police witnesses by not only stating evidence not in the record but also improperly suggesting that the defendant had an obligation to produce evidence, and request for particularized curative instructions was ignored); *Commonwealth* v. *Coren*, 437 Mass. 723, 731 (2002) (prosecutor misstated important aspects of the testimony going to the central issue in the case beyond fair inferences, and the judge declined to give particularized instructions); *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 717-720 (1989) (prosecutor appealed to ethnic stereotypes and xenophobic feelings by repeatedly referring to the defendant as one of a "tightly knit organization" of "Colombian drug dealers," despite lack

401-402 (1975); *Commonwealth* v. *Wallace,* 417 Mass. 126, 133-134 (1994); *Commonwealth* v. *Jackson,* 428 Mass. 455, 461 (1998); *Commonwealth* v. *Mitchell,* 428 Mass. 852, 858-859 (1999); *Commonwealth* v. *Beland,* 436 Mass. 273, 288-290 (2002); *Commonwealth* v. *Maynard,* 436 Mass. 558, 569-571 (2002); *Commonwealth* v. *Daley,* 439 Mass. 558, 566-567 & n.6 (2003).[9,10,11]

*Judgments affirmed.*

of evidence to support the references, and judge's charge did not lay special stress on closing arguments as lacking evidentiary status). This is not such a case.

[9]The defendant did not object to the prosecutor's reference to the "special kind of person" it takes to "sleeve [a knife] into a person's body," so that it is reviewable, assuming error, under the "substantial risk of a miscarriage of justice" standard. See *Commonwealth* v. *Kozec,* 399 Mass. at 518 n.8. The absence of any objection "rightly appears to be of large, if not necessarily conclusive, importance upon appellate review." *Commonwealth* v. *Cobb,* 26 Mass. App. Ct. 283, 288 n.7 (1988). Since we conclude that no reversible error occurred even under the more favorable (to the defendant) "prejudicial error" standard applicable to preserved errors, any argument that this remark created a substantial risk of a miscarriage of justice would be unavailing if made; but the defendant does not even advance such an argument, which is accordingly waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[10]The defendant argues that the "cumulative effect of his four assignments of error in the prosecutor's closing requires reversal." As there was, at most, one arguable error, that argument fails. *Commonwealth* v. *Degro,* 432 Mass. 319, 329 (2000).

[11]While we are firmly persuaded that the challenged prosecutorial remarks here — even the exuberant final one — came nowhere near depriving the defendant of a fair trial or meriting reversal, we nonetheless express our dismay that yet another prosecutor has exposed himself to charges of having "sailed unnecessarily close to the wind," *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976), essentially by ignoring the clear guidelines on the subject that our courts have frequently announced, *Commonwealth* v. *Masello,* 428 Mass. 446, 453 (1998), quite likely as the result of lack of thoughtful and careful preparation, *Commonwealth* v. *McLeod,* 30 Mass. App. Ct. 536, 541 (1991), with the consequence that the court's time and energy must be devoted — again, unnecessarily — to the difficult task of evaluating the propriety and impact of challenged closing statements in the context of the entire proceedings. We remind prosecutors of our recent admonition that "[o]ur conclusion that no misconduct occurred here should by no means be read as an endorsement of the prosecutor's actions. . . . While the government here managed to skate a fine line between proper argument and reversible error . . . there was no justification for cutting things so fine. Were the facts changed but slightly, the outcome here easily could [have] be[en] different." *Commonwealth* v. *Beaudry,* 63 Mass. App. Ct. 488, 499-500 (2005), further appellate review granted, 445 Mass. 1101 (2005).