COMMONWEALTH *vs.* KEVIN S. BROOMHEAD.

No. 05-P-312.

Plymouth. March 15, 2006. - October 13, 2006.

Present: ARMSTRONG, C.J., BECK, & TRAINOR, JJ.

*Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Comment by prosecutor, Instructions to jury. *Evidence,* Absence of witness, Failure to produce witness.

At a criminal trial, a missing witness argument by the prosecutor, who failed to obtain permission from the judge to make such argument, infected the trial with prejudicial error in the absence of a curative instruction [549-554], such as created a substantial risk of a miscarriage of justice [554-555].

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on April 24, 2002.

The case was tried before *John M. Julian,* J.

*Lisa M. Sheehan* for the defendant.

*Audrey Anderson Kachour,* Assistant District Attorney, for the Commonwealth.

BECK, J. On April 24, 2002, the defendant, Kevin S. Broomhead, was arrested for operating under the influence of liquor, second offense. See G. L. c. 90, § 24(1)(*a*)(1). In his first trial, on June 5, 2003, the jury were unable to reach a unanimous verdict. When he was tried for a second time, on August 20, 2003, the jury were again unable to come to a unanimous verdict. In his third trial, on December 18 and 19, 2003, the jury found the defendant guilty. The defendant appeals. He argues that various prosecutorial errors created a substantial risk of a miscarriage of justice. We agree and therefore reverse.[1]

---

[1]Without citation to any legal authority, the defendant also argues that the fact that the Commonwealth proceeded with three trials against him in a span of six months "constituted overzealous prosecution and should not have been

*Factual background.* We recite the facts in the light most favorable to the Commonwealth. At the time of the alleged offense at issue here, the defendant lived in Middleborough with two of his brothers and his parents. On the evening of April 24, 2002, he arrived home sometime between 10:00 and 10:30 P.M. He took a shower and ate dinner. At about 11:30 P.M., the telephone rang. The caller was his brother, asking for a ride home from a friend's house because he was too drunk to drive. The defendant got dressed and drove to the friend's house to pick up his brother and another friend. When the defendant arrived, his brother and the friend "didn't want to leave right away," so he drank two small glasses of beer. He stayed about an hour and then left with his brother and his brother's friend. The defendant was driving his blue pickup truck and towing a trailer that contained his tools.

Officer Angelo Lapanna of the Middleborough police department saw the defendant's pickup truck and trailer traveling between fifty-seven and sixty miles per hour southbound on Route 28 in Middleborough. While following the truck, Lapanna observed the truck slowly drift across the fog line and drive onto the right shoulder of the road four times. He also saw the truck cross the center line of the road into the northbound lane two times.

After stopping the truck, Lapanna approached the driver's side window and asked the defendant, who was driving, for his license and registration. The defendant had trouble producing his license, fumbling with different cards in his wallet, repeatedly going over the same cards, and dropping his credit card before locating his license. Lapanna smelled a strong odor of alcohol in the truck, and noticed that the defendant's eyes were glassy. The officer asked the defendant if he had been drinking and the defendant responded that he had drunk a few beers at his friend's house.

permitted." "This is an insufficient appellate argument and is not properly before us. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975)." *Commonwealth* v. *Silva,* 401 Mass. 318, 327 (1987). Moreover, "if the Commonwealth present[ed] evidence legally sufficient to convict, double jeopardy principles do not bar retrial after a mistrial declared because of a 'hung jury.' " *Berry* v. *Commonwealth,* 393 Mass. 793, 794 (1985), quoting from *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974).

Lapanna asked the defendant if he had any medical conditions that the officer should be aware of. The defendant responded that he had a metal plate in his foot or leg that sometimes affected his balance. Lapanna then administered three field sobriety tests. The defendant failed the one-leg stand test, the nine-step walk and turn test, and the alphabet test. Lapanna concluded that the defendant was under the influence of alcohol and arrested him.

During his closing argument in the third trial, the prosecutor stated:

> "Lastly, credibility. The defendant tells you that he goes to pick up his brother. He's got his brother in the car, and he's got the third individual Bob Allen. They are all in the car. They were with him when he leaves that party or wherever they were until the time he gets stopped. They were there during the arrest procedures. They were there during the field sobriety tests. Where are they today? I will submit to you this is an important day in the life of [the defendant], and where are they today? They were there for everything. They are not here today."

After the jury in the third trial had begun deliberations, they sent the following question to the judge: "What happens if we cannot be unanimous on a guilty verdict?" Without specifically answering the question, the judge told the jury that because it was so late in the day (4:25 P.M. on December 18, 2003), he was sending them home and asking them to return the next day to continue deliberating. The jury found the defendant guilty on the following day, December 19, 2003. The parties agree that the December 19, 2003, proceedings were not on the tape provided to the transcriber, and there is no transcript of that day's proceedings.

*Discussion.* The defendant asserts, for the first time on appeal, that the prosecutor's failure to seek the judge's approval before making the missing witness argument, along with several other alleged errors, individually and cumulatively, constitute a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Gaudette*, 441 Mass. 762, 765-766 (2004). We hold that the prosecutor's failure to obtain permission to comment on a miss-

ing witness, coupled with the judge's failure to take corrective action, constituted a substantial risk of a miscarriage of justice.

1. *Missing witness comment.* The general principles concerning a missing witness instruction or comment are clear. "Where a defendant has knowledge of an available witness whose general disposition toward the defendant is friendly, or at least not hostile, and who could be expected to give testimony of distinct importance to the defendant's case, but the defendant, without explanation, fails to call that witness, the jury may permissibly infer that that witness would have given testimony detrimental to the defendant's case." *Commonwealth* v. *Rollins,* 441 Mass. 114, 118 (2004), quoting from *Commonwealth* v. *Thomas,* 429 Mass. 146, 150-151 (1999). "Such an inference can have 'a seriously adverse effect on the noncalling party.' " *Commonwealth* v. *Ortiz,* 61 Mass. App. Ct. 468, 471 (2004), quoting from *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134 (1986). "The jury should, therefore, be invited to draw an adverse inference against a party where a witness has not been called 'only in clear cases, and with caution.' " *Ibid.* Our cases are particularly "sensitive to references to a defendant's failure to adduce evidence on his behalf because of the necessity to avoid shifting the burden of proof to the defendant." *Commonwealth* v. *Bryer,* 398 Mass. 9, 12 (1986). See *Commonwealth* v. *DelValle,* 443 Mass. 782, 795 (2005); *Commonwealth* v. *Ortiz,* 61 Mass. App. Ct. at 471.

At issue in this case is whether the prosecutor's comments in his closing argument regarding the two missing witnesses, absent permission from the judge to make such comments, gave rise to a substantial risk of a miscarriage of justice. We have stated that "if counsel plans to argue to the jury that an inference may be drawn against the opposing party for failure to call a witness, the proper practice is first to obtain the permission of the trial judge to do so." *Commonwealth* v. *Vasquez,* 27 Mass. App. Ct. 655, 658 (1989). See *Commonwealth* v. *Evans,* 42 Mass. App. Ct. 618, 623 (1997). Nonetheless, a "prosecutor's reference — without having obtained a prior favorable ruling from the judge — to the defendant's failure to call [a witness] does not itself ordinarily create a basis for reversal; it merely creates the risk that the attorney will be interrupted by the judge

who may then give an unfavorable instruction to the jury." *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. 570, 582 (1994), *S.C.*, 418 Mass. 777 (1994). See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 657-658; *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 827, 830 n.4 (2000). "The judge, as a matter of discretion, may wait until the conclusion of the argument to give such correction." *Ibid.* See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 657-658 & n.4.

In cases where the prosecutor has commented on a defendant's missing witness without first obtaining permission to do so from the trial judge, and where the judge has not interrupted the prosecutor, we have on occasion concluded that "[b]y permitting the missing witness argument, the judge implicitly concluded that the foundational requisites had been met." *Commonwealth* v. *Smith*, 49 Mass. App. Ct. at 830. See *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. at 582.

Nevertheless, the main line of cases has emphasized that "[b]efore allowing a prosecutor to argue that an adverse inference is warranted, a judge must make a ruling, 'as matter of law, that there is a sufficient foundation for such inference in the record.' " *Commonwealth* v. *Ortiz*, 61 Mass. App. Ct. at 471, quoting from *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 802 (2001). See *Commonwealth* v. *DelValle*, 443 Mass. at 794-795 (suggesting error, albeit harmless, due to strength of Commonwealth's case, where prosecutor's direct examination of witness may have unfairly invited jury to draw improper conclusions from defendant's failure to call witnesses and prosecutor had failed to obtain permission to comment from judge).

Because a judge must make a ruling that the Commonwealth has laid a proper foundation for a missing witness inference, we should be hesitant to conclude that a judge's failure to make such a ruling implies that there was such a foundation in the record. To do so could encourage loose practice and undermine the principle that missing witness arguments should not be made except by express leave of the court. In this case, the prosecutor's failure to obtain permission from the judge, coupled with the judge's failure to interrupt the prosecutor's closing argument, make a ruling that the Commonwealth had laid a

proper foundation, or give curative instructions, constituted error.

The Commonwealth argues that the prosecutor's failure to ask for permission to comment about the missing witnesses was harmless error because, had he requested one, the judge would certainly have given the instruction. It is not obvious that this is so.

In order to determine whether there has been a sufficient foundation for a missing witness instruction, we look at "(1) whether the case against the defendant is [so strong that,] faced with the evidence, the defendant would be likely to call the missing witness if innocent; (2) whether the evidence to be given by the missing witness is important, central to the case, or just collateral or cumulative; (3) whether the party who fails to call the witness has superior knowledge of the whereabouts of the witness; and (4) whether the party has a 'plausible reason' for not producing the witness." *Commonwealth* v. *Ortiz*, 61 Mass. App. Ct. at 471, quoting from *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 802.

Applying those factors, we conclude that the Commonwealth would not have been entitled to a missing witness instruction. As to the first factor, the Commonwealth's case was not strong. There were only two witnesses at the trial, the defendant and Lapanna, and only if the jury credited the testimony of Lapanna over that of the defendant would the Commonwealth prevail. See *Commonwealth* v. *Ortiz*, 61 Mass. App. Ct. at 472. The defendant explained his poor performance on the field sobriety tests through testimony that he had a metal plate in his leg, and by showing the jury the scar where the metal plate was located. The jury, of course, did not have to believe the defendant, but the case nevertheless cannot be said to be strong for the Commonwealth.

Turning to the second factor, we recognize that the missing witness testimony would not have been merely cumulative because there were no witnesses who corroborated the defendant's story. However, the missing witnesses were the defendant's brother and friend. In all probability the jury would not have given much weight to their exculpatory testimony. See *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 803. As to the

brother, "[c]ommon sense and the case law dictate that the testimony of a blood relative of the defendant is inherently less credible than the testimony of other witnesses." *Id.*, quoting from *Commonwealth* v. *Thomas*, 429 Mass. at 153. As to the friend, the argument that his testimony would not have been merely cumulative is not a particularly strong one. The Commonwealth suggests that the defendant's brother and friend were in the pickup truck with the defendant and could have testified about the defendant's sobriety and whether there was construction on Route 28. However, the defendant testified that his brother and the friend had been drinking that evening; therefore, their perception regarding his sobriety and whether there was construction on Route 28 might have been subject to impeachment.

At trial, there was conflicting testimony whether there was construction taking place on Route 28 that evening. The defendant testified that there was, and that the road conditions were the cause of his erratic driving. Lapanna testified that he did not "recall any road construction" on the section of Route 28 where he observed the defendant driving. The defendant also explained his erratic driving on the fact that he had made the trailer attached to his pickup truck, and that on the night of his arrest, "[t]he sway bar on the trailer [was] snapped off," causing both the trailer and the truck to "twist" as he "veer[ed] away" from the construction and the potholes in the road.

The third factor to consider is whether the defendant had superior knowledge as to the identity or whereabouts of the witness. In an obvious sense, the defendant had superior knowledge of his brother and the friend. However, there is no suggestion in the record that the Commonwealth was unaware of their whereabouts or was unable to procure their physical presence in court. See *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 804. Indeed, the record reflects that the police were able to interview them. The Commonwealth appears to have had equal access to the missing witnesses and presents no reason why it did not produce them at trial and cross-examine them as hostile witnesses. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 285 n.6 (1991).

As to the fourth factor, the defendant has not suggested a plausible reason for not producing either of the witnesses. He testified that they were not at the trial because they were working, but he did not establish that he made "a reasonable effort to produce" them. *Commonwealth* v. *Alves,* 50 Mass. App. Ct. at 804. Nonetheless, we think that the defendant had a reason not to call either of these witnesses because both individuals were under the influence of alcohol on the night in question, and neither would have been likely to bolster the defendant's credibility in the eyes of the jury. The defense may have strategically chosen to limit the case to the defendant's testimony versus Lapanna's, considering that the defendant was able to explain his poor performance on the field sobriety tests. See *Commonwealth* v. *Anderson,* 411 Mass. at 283-284 (missing witness instruction inappropriate where party may have chosen not to call witness because witness's criminal history may have weakened party's case even if witness could have provided helpful testimony).

In the present case, "the foundational requirements were not squarely met and the case for giving the [missing witness] instruction was far from clear." *Commonwealth* v. *Alves,* 50 Mass. App. Ct. at 805. The inference in the prosecutor's closing argument that the defendant wilfully attempted to withhold significantly damaging evidence is harsh, particularly when the missing witnesses were his brother and friend, who were themselves too drunk to drive. See *ibid.* We therefore hold that the missing witness argument by the prosecutor infected the trial with prejudicial error in the absence of a curative instruction by the judge.

2. *Substantial risk of a miscarriage of justice.* We proceed to determine whether the error constituted a substantial risk of a miscarriage of justice.[2] "The substantial risk standard requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been

---

[2]The defendant argues that the cumulative effect of his four assignments of error in the prosecutor's closing requires reversal. As we conclude that there was, at most, but one error, that argument fails. *Commonwealth* v. *Degro,* 432 Mass. 319, 329 (2000). *Commonwealth* v. *Correia,* 65 Mass. App. Ct. 27, 28 n.10 (2005).

made.' " *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002), quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).

We emphasize that this was a close case. The Commonwealth's first two attempts to convict the defendant resulted in hung juries, and the third jury submitted a question to the judge asking what would happen if they could not reach a unanimous verdict. The defendant gave an explanation for his poor performance on the field sobriety tests (prior injury to his leg) as well as his erratic driving (potholes and construction on the road).

Because it was a close case, "we cannot say with fair assurance that the [error] did not substantially sway the outcome of the case." *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. 383, 391 (2000) (citations omitted). Contrast *Commonwealth* v. *Alves*, 50 Mass. App. Ct. at 805-806 (abuse of discretion in giving missing witness instruction did not require reversal where Commonwealth had strong case). The prosecutor did not comment on the missing witnesses in either of the first two trials, and neither of those juries were able to reach a unanimous guilty verdict. The third jury reached a guilty verdict after hearing the same evidence as the first two juries only after a different prosecutor commented on the missing witnesses.

*Judgment reversed.*

*Verdict set aside.*