NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-873

COMMONWEALTH

vs.

BRADLEY J. SCARBROUGH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his conviction, following a jury trial in Cambridge District Court, of one count of indecent assault and battery on a person fourteen or older, in violation of G. L. c. 265, § 13H. The defendant contends that the judge erred by declining to give a missing witness instruction relative to the victim. Because we are not persuaded that the defendant laid a sufficient foundation for a missing witness instruction, we affirm.

1. Discussion. a. Standard of review. We review the trial judge's decision to decline a missing witness instruction for abuse of discretion. See Commonwealth v. Williams, 450 Mass. 894, 901 (2008). Such a decision "will not be reversed unless the decision was manifestly unreasonable." Commonwealth

v. <u>Saletino</u>, 449 Mass. 657, 667 (2007), citing <u>Commonwealth</u> v. <u>Thomas</u>, 429 Mass. 146, 151 (1999).

b. <u>Missing witness instruction</u>. The proponent of a missing witness instruction bears the burden of establishing, on the record, a sufficient foundation for the instruction. <u>Commonwealth</u> v. <u>Barrett</u>, 97 Mass. App. Ct. 437, 445 (2020). In deciding whether this foundation has been established, a judge must consider several factors. These factors "include, without limitation, the strength of the case against the party against which the adverse inference is sought to be drawn or, stated otherwise, the importance of the testimony of the missing witness to that party; the 'physical availability of the witness, and the likelihood that he can be produced by summons or otherwise,' absent a plausible reason for nonproduction; whether the evidence could be produced from other sources; and whether the witness is equally available to either party." <u>Williams</u>, 450 Mass. at 900, quoting <u>Commonwealth</u> v. <u>Franklin</u>, 366 Mass. 284, 293 (1974).

Here, there was conflicting evidence on each of these factors. Regarding the physical availability of the witness, the judge was made aware that the Commonwealth had made some -- although not exhaustive -- efforts to obtain the victim's presence at trial but had not been successful. See <u>Williams</u>, <u>supra</u>. The Commonwealth also proffered some evidence of other

2

plausible reasons for nonproduction of the witness.  For example, there was evidence that the victim was subject to a probation revocation at the time of the trial, from which the judge could have inferred that she would not be sympathetic to or cooperative with the prosecution in this case.  See id.  See also Commonwealth v. Anderson, 411 Mass. 279, 283 (1991) (Commonwealth's failure to call inmate to testify concerning altercation at prison permissible where "[l]ogic would dictate that, because of his status [as an incarcerated person], and the Commonwealth's role in prosecuting him, [the witness] would be naturally antagonistic toward the Commonwealth's interests").  There was also ample evidence that the victim was intoxicated at the time of the event, which could have detracted from the potential strength and credibility of her testimony.  See Commonwealth v. Broomhead, 67 Mass. App. Ct. 547, 554 (2006) (missing witness instruction inappropriate where defendant had plausible reason not to call witness because "both [witnesses] were under the influence of alcohol on the night in question, and neither would have been likely to bolster the defendant's credibility in the eyes of the jury").  Additionally, the judge could have concluded that the victim's address, which we infer was provided on the unredacted copies of the ambulance records

entered into evidence, was equally available to both parties.[1] See id. at 553.

Even assuming that none of these factors supported the judge's decision to deny the requested instruction, however, we conclude that on the strength of the evidence of the victim's intoxication alone, the judge was within her discretion in concluding that a missing witness instruction was not required.[2] See Williams, 450 Mass. at 901. The contested issue at trial was whether the victim consented to the sexual activity, and the Commonwealth presented compelling evidence that the victim was too intoxicated to be capable of consent. See Commonwealth v. Blache, 450 Mass. 583, 591-592 (2008) (lack of consent may be established by proving beyond reasonable doubt that victim was "so impaired as to be incapable of consenting"). Contributing to our conclusion are the following facts, established chiefly through the testimony of four Commonwealth witnesses, as well as through admission of the Emergency Medical Services (EMS) Report into evidence.

---

[1] To the extent that the defendant suggests that his probation conditions -- specifically, the requirement that the defendant have no contact with the victim -- prohibited defense counsel from using legal process to obtain her presence as a witness at trial, he has provided no legal support for his position.

[2] We are mindful that after the defendant requested a missing witness instruction, the trial judge stated, "I don't think [the Commonwealth's case is] strong enough without [the victim]." However, after a careful review of the record, we take a different view.

4

Bystanders testified that during the incident, the victim appeared to be "very intoxicated." The victim's head was "tilting back," as if she could not keep it straight, and her "eyes were rolling back." The victim's body movements were "slowed" and "delayed," and her eyes were "glazed." She did not "seem in full control," or even conscious.

Once officers arrived on scene, they separated the parties. They observed that the victim "was hunched over, swaying back and forth, and was having trouble to stay awake." She appeared "disoriented, under the influence of something. She was kind of nodding off, swaying, had trouble keeping her eyes open, you know."

When officers attempted to speak with the victim, they noticed that her speech was "very slurred" and "unintelligible." It took the victim "two to three minutes" to answer three basic questions, including, "Where are you? How old are you? And what's today's date?" During the entire ten-minute conversation with officers, the victim was only able to keep her eyes open for "[a] minute or so." There was also a "heavy odor of alcoholic beverage coming from her breath."

Officers also described the victim as having "trouble sitting on her own." When asked if she could stand, the victim "attempted to do so, [and] she quickly fell," so officers requested an ambulance. Once the ambulance arrived, the

5

officers "tried to escort [the victim] to the stretcher, [and] she tried to stand, but physically couldn't." When the victim tried to walk to the stretcher, she "almost fell down without [police] assistance." Officers ended up having to "basically carry her to the stretcher." Once the victim was on the stretcher, "she was able to wake up and say that she didn't want to go, and then fell -- then passed out."

In addition to the above testimony, defense counsel introduced an EMS incident report into evidence, which contained elements that strengthened the Commonwealth's case. For instance, the report indicated that EMS's primary impression of the victim was that she suffered from "[a]lcohol [i]ntoxication." The report noted that "[t]here was an empty bottle of wine next to the [victim] that [she] confirmed she drank," and that the victim "was unable to self ambulate." Finally, the incident report states that the victim was unable to provide her signature because she was "[i]ntoxicated."

Under these circumstances, where the Commonwealth presented overwhelming evidence that the victim was "so impaired as to be incapable of consenting," the judge did not abuse her discretion by refusing to give a missing witness instruction. See Blache, 473 Mass. at 591-592. See also Commonwealth v. Jansen, 459 Mass. 21, 30-31 (2011); Commonwealth v. Chilcoff, 103 Mass. App. Ct. 48, 55 (2023).

6

2.  Conclusion.  Defendant's conviction of one count of indecent assault and battery on a person fourteen or older, in violation of G. L. c. 265, § 13H, is affirmed.

Judgment affirmed.

By the Court (Green, C.J., Hand & Hodgens, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  November 1, 2023.

---

[3] The panelists are listed in order of seniority.

7